PAGE and Another *v.* HOLLINGSWORTH.

The owner of domestic animals not naturally inclined to commit mischief, as cows, oxen, and the like, is not liable for any injury committed by them to the person or personal property, unless it can be shown that he previously had notice of their mischievous propensity, or that the injury was attributable to some neglect on his part.

But as the propensity of such animals to rove is natural and notorious, the owner is bound, at his peril, by the common law, (and the rule, as a general one, is applicable in this state,) to confine them on his own land; and if they escape and commit a trespass on the land of another, unless through the defect of fences which the latter ought to repair, the law deems the owner himself a trespasser, and holds him liable, though he had no notice in fact of such propensity.

APPEAL from the *Tippecanoe* Court of Common Pleas.

DAVISON, J.—Trespass. The complaint is that the defendant's cattle broke and entered the plaintiffs' close and destroyed their corn. Verdict for the defendant. New trial refused and judgment.

It appeared that in *January*, 1852, the defendant was the owner of three hundred and eighteen head of cattle, from three to four years old, and had rented from *Page*, one of the plaintiffs, a stock field for pasture, which was inclosed by an indifferent fence; that the cattle were pastured in this field in the day time, and there watched by *Peter* and *Thomas Kennedy*, who were employed by the defendant to take care of them, but at night they were put into a stubble field furnished by *Page*, which was inclosed by a good fence, such as careful husbandmen generally keep; that the corn field in which the trespasses

were committed, belonged jointly to the plaintiffs, and adjoined the stubble field in which the cattle were kept in the night time; that the *Kennedys* went round this field every evening, saw that the fences were up and that the rails which the cattle had knocked off the night before were all put up again; and that on a stormy night, a few days after the cattle had been at *Page's*, they broke through the fence from the stubble field into the plaintiffs' corn field and destroyed a quantity of their corn.

Upon the trial, there was evidence sufficient to warrant the jury in finding that the cattle were not breachy; that they were carefully attended by the defendant's employees; and that on his part there was no want of care.

There is in the record a bill of exceptions, which shows that the Court instructed the jury as follows:

1. If the defendant exercised all the attention and care over the cattle that was necessary, in their situation, to keep that number of cattle from trespassing or breaking the inclosure, and was guilty of no wrongful act or omission of duty in the premises, and the damages were done unavoidably, by circumstances which the defendant could not control or avoid, the law is with the defendant.

2. There must be some positive wrong on the part of the defendant in this cause, before a verdict can be found against him.

If the trespass in this case had been committed against the person or personal property of the plaintiffs, and not against their real estate, the instructions would have been clearly right, because cattle, such as those charged with having broken and entered the plaintiffs' close, viz., cows, oxen, steers, and the like, are regarded *mansuetæ naturæ*, not naturally inclined to commit mischief. And the owner, for such trespass merely against the person or personal property, would not be held liable, unless it could be shown that he previously had notice of their viciousness, or that the injury was attributable to some neglect on his part. 1 Chit. Pl. 82, 83.—Bac. Ab., tit. Trespass, 1.—*Vrooman* v. *Lawyer*, 13 Johns. R. 339.—*Lyke* v. *Van Leuven*, 4 Denio 127.

But this rule does not apply to the case before us. Here a close was broken and entered by such animals; and though their owner may not know when they are inclined to commit mischief, still it is said "they have a natural and notorious propensity to rove," which he is always presumed to know. Hence, he is bound, at his peril, to confine them on his own land; for if they escape and commit a trespass on the land of another, unless through the defect of fences which the latter ought to repair, the law deems the owner himself a trespasser, and holds him liable in trespass *quare clausum fregit*, though he had no notice in fact of such propensity. 3 Blacks. Comm. 211.—6 Mass. 90.—4 Metcalf 389.—8 *id.* 284.— 1 Chit. Pl. 83. This is the common law rule on the subject, and we have heretofore decided that, as a general rule, it prevails in *Indiana*. *Williams* v. *The New-Albany, &c., Railroad Co.,* 5 Ind. R. 111.—*The Lafayette, &c., Railroad Co.* v. *Shriner,* 6 *id.* 141.

If the principles above stated are sound, as we think they are, the ruling of the Common Pleas can not be sustained. Against the plaintiffs, no delinquency was shown. The fence through which the cattle broke and entered the corn field, was considered by the parties sufficient and in good repair, and the authorities we have cited establish the principle, that the owner of such cattle can not, in defence of a suit like the present, set up the care and diligence which he may have exercised in an unavailing effort to confine them on his own land. Indeed the defendant in this case may have been entirely innocent; yet his cattle having broken and entered the close, and therein destroyed corn, the plaintiffs not being in fault, the law holds him responsible for the trespass. The jury, in our opinion, were improperly instructed.

*Per Curiam.*—The judgment is reversed with costs. Cause remanded, &c.

*J. M. La Rue* and *B. O. Deming,* for the appellants.

*R. C. Gregory* and *R. Jones,* for the appellee.