THE INDIANAPOLIS, CINCINNATI, AND LAFAYETTE RAILROAD COMPANY *v.* HARTER.

RAILROAD.—*Injury to Animals.*—*Negligence.*—The rule, except as modified by the act on the subject of inclosures, etc., 1 G. & H. 342, and the act authorizing the county commissioners to determine what animals may run at large, is, that every man shall fence in his own stock, and is not required to fence out other stock.

*Held,* accordingly, that, where there was no order of the commissioners shown, and the plaintiff knowingly permitted his cattle to run habitually at large in the immediate vicinity of a railroad, where fencing was not required, he was guilty of negligence; and if his stock was killed, he had contributed to the injury and could not complain. There was no proof of any wantonness in the management of the train.

APPEAL from the Johnson Common Pleas.

WORDEN, J.—This was an action by the appellee against the appellant to recover damages for the alleged negligent killing of a cow belonging to the plaintiff, by the defendant, by means of her locomotive and train of cars, upon a railroad track. The action was based upon the common law liability, it not being alleged that the road was not properly fenced. The cow seems to have been killed in a town, where the company was not required to fence her road.

Issue, trial, verdict, and judgment for the plaintiff.

In addition to the general verdict for the plaintiff, the following answers to interrogatories were returned by the jury, viz.:

First. What was the usual rate of speed of defendant's train at the point where plaintiff's cow was killed? Answer. Six miles per hour.

Second. How fast was defendant's train running at the time it ran over said cow? Answer. Six miles per hour.

Third. Was said cow killed whilst attempting to cross defendant's track? Answer. No.

Fourth. How close was the locomotive of said train to said cow when she first attempted to cross said track? Answer. No evidence she was attempting to cross the track.

Fifth. Was said cow killed at a street crossing? Answer. Struck thirty feet below, and thrown off at the crossing.

Sixth. Was said cow in the habit of running at large in the immediate vicinity of the place where she was killed? Answer. Yes.

Seventh. Did said cow so run at large with the plaintiff's knowledge and consent? Answer. Yes.

Eighth. What, if any, effort did defendant's employees in charge of said train make to avoid running over plaintiff's cow? Answer. Sounding the whistle down brakes, but not in proper time to avoid collision.

The defendant moved on these answers to interrogatories for judgment in her favor, notwithstanding the general verdict; but her motion was overruled, and she excepted.

We are of opinion that the defendant was entitled to judgment on the findings, and, therefore, that the court erred in overruling her motion.

There is no allegation of any wilful injury to the cow, nor any allegation of gross negligence; even if such gross negligence as implies a willingness to inflict the injury would render the defendant liable, although the plaintiff himself was guilty of negligence. The charge is one of simple negligence on the part of the defendant, and this is found true by the general verdict. But the special answers also find it to be true that the plaintiff knowingly and consentingly permitted his cow to habitually run at large in the immediate vicinity of the place where she was killed; and the question is presented whether, under these circumstances, he is himself free from negligence. We think that he is not, and that he cannot legally maintain this action.

The case, it will be remembered, is not one in which the railroad company is guilty of any default in not keeping her road properly fenced. At common law, the owner of animals is obliged to keep them upon his own grounds, and is a wrong-doer if he suffer them to stray upon the grounds of others. This, as a general rule, is the law of Indiana. *Williams* v. *The New Albany and Salem Railroad Company*, 5

Ind. 111; *The Lafayette and Indianapolis Railroad Company v. Shriner*, 6 Ind. 141; *Page v. Hollingsworth*, 7 Ind. 317; *The Indianapolis and Cincinnati Railroad Company v. Kinney*, 8 Ind. 402; *Myers v. Dodd*, 9 Ind. 290; *The Indianapolis and Cincinnati Railroad Company v. McClure*, 26 Ind. 370; *The Michigan Southern and Northern Indiana Railroad Company v. Fisher*, 27 Ind. 96.

This general rule of the law of the State is subject to whatever qualifications may be effected by the statute authorizing the boards of county commissioners to determine what animals may run at large (1 G. & H. 65); but in this case it does not appear that any animals had been permitted to run at large by the order of the commissioners. The case, therefore, stands upon the common law ground solely. We are aware that, practically, the common law rule, requiring the owners of animals to keep them on their own grounds, is not very rigidly observed. There are many persons, and especially many living in towns, and some in cities, that seem to act upon the theory that their cows, and in many instances their hogs, may rightfully roam at large, and obtain a scanty subsistence upon the highways and neighboring, unenclosed lands, thereby making it necessary for every one to guard his premises, with much vigilance and expense, from the depredations of these marauding and vagrant animals that are thus permitted to wander in quest of food. This condition of things was, perhaps, well enough in the early settlement of the State, when there was but little land cleared or fenced, and when the unenclosed woodland or prairie furnished an abundant, but the only, supply of food for the stock of the settler. But the situation has greatly changed within the lapse of half a century, and every passing year confirms the wisdom and justice of the common law on this subject. The true legal theory is that every man should be required to fence his own stock in, and not be required to fence other people's out. This is the law of the present day, except so far as it is modified by the act above cited authorizing the commissioners to determine what

animals may run at large, and the act on the subject of in-
closures, etc.   1 G. & H. 342.   It will, doubtless, be acted
upon, practically, ere long, as fencing materials become more
scarce, and the necessities of the people more imperatively
require that it should be.

In this case there was neither allegation nor proof that the
board of commissioners had made any order permitting any
animals to run at large.   No question, therefore, arises as to
the validity or construction of the statute on that subject.
The case stands as if no such statute existed.

The plaintiff had no right to let his cow wander abroad
and upon the lands of the defendant.   Yet he knowingly
permitted her to run habitually in the immediate vicinity of
the place where she was killed.   Being thus himself guilty
of negligence in permitting his cow to occupy the place of
danger, he cannot complain of the negligence of the defend-
ant.   His own want of care contributed directly to the
injury.   The view we take of this question is fully sustained
by the following cases:   *Louisville and Frankfort Railroad
Company* v. *Ballard,* 2 Met. Ky. 177;  *The Illinois Central
Railroad Company* v. *Phelps,* 29 Ill. 447;  *Eames* v. *Salem
and Lowell Railroad Company,* 98 Mass. 560;  *Bowman* v.
*The Troy and Boston Railroad Company,* 37 Barb. 516;  *Ben-
nett* v. *The Chicago and North-Western Railway Company,* 19
Wis. 145;  *The North Pennsylvania Railroad Company* v.
*Rehman,* 49 Pa. St. 101.

The judgment is reversed, with costs, and the court below
instructed to render judgment for the defendant.

*S. P. Oyler* and *D. W. Howe,* for appellant.

*D. D. Banta* and *C. Byfield,* for appellee.