THE INDIANAPOLIS, PERU AND CHICAGO R. W. CO. v. CAUDLE.

RAILROAD.—*Stock Killed.*—*Statutory Action.*—A railroad company is not liable under the statute for injuring or killing stock which enters upon its track at a point where it is not required by such statute to fence.

SAME.—*Contributory Negligence.*—*Pleading.*—*Demurrer to Evidence.*—In an action against a railroad company, to recover damages for the alleged negligent killing or injury of live-stock, the plaintiff must allege in his complaint, and prove on the trial, that he was guilty of no contributory negligence; and, in the absence of such evidence, a demurrer to his evidence should be sustained.

From the Hamilton Circuit Court.

*D. Moss*, for appellant.

*J. W. Evans* and *R. R. Stephenson*, for appellee.

BIDDLE, C. J.—Suit commenced before a justice of the

The Indianapolis, Peru and Chicago R. W. Co. v. Caudle.

peace, by the appellee, against the appellant, for killing a cow, the property of the appellee, by running over her with a locomotive and train of cars.

The complaint contains several paragraphs, charging that the cow was killed where the railroad was not fenced; and also, that she was killed in a wanton, careless, negligent and wilful manner by the appellant, without any fault of the appellee.

The case was appealed from the judgment of the justice to the circuit court, wherein a jury was called to try the issue; but, before the trial closed, the appellant demurred to the evidence, and the court decided the case in favor of the appellee. Exceptions were taken, judgment rendered, and the case appealed to this court.

The evidence is as follows:

George Hamilton, sworn, testified: " I reside at Fisher's Station, in this county. The track of the defendant's railroad runs on the east side of the town. There is two hundred or two hundred and fifty yards on the east side of the track not fenced; a switch of that length runs on east side. The track is fenced on the west side fifteen feet from the centre of the railroad to fence on west, except right at corner of highway and railroad, where there is a telegraph office, which fills the space between railroad and fence. I am engineer and sawyer. I was present when the cow of Mr. Caudle was killed. The first I saw the engine it was a quarter of a mile above the station. The engine made no whistle; saw cow above crossing one hundred yards, on west side of track; train was running at fifteen miles an hour; did not check up. The cow was between fence and railroad. The cow kept clear of railroad until she came to the platform at telegraph office, when she tried to cross track, and the engine struck her and threw her into the road. It was a light freight train. I did not see any thing to hinder the train being checked. The cow ran about eighty yards,

after I saw her. The train could be stopped in twice the length of itself. No signal was given to stop. I don't think any effort was made by engineer to stop it. There was no decrease in the speed of the train. I think it could have been checked in time to avoid the accident."

Cross-examination: "The telegraph office is near the county road, on the south of the town. On the east side of the track there is a depot, saw-mill and other buildings. There is a switch on east side of the track. The cow was about half-way up the switch when I saw her. The train was about the upper end of switch. The first I noticed of cow she was in front of the engine, on the west side of track, about the centre of the switch, running between fence and track. When she reached the platform, she attempted to cross the track, and was struck on the track, between the telegraph and depot. When she reached the telegraph office, she had to cross the track as she could go no further down, on account of the platform. I have had charge of engines on railroad; run on road, as fireman on engine, twenty-eight months. It was not very dark. The head-lights were lit. The train did not stop at the place at all. Never did stop there unless it was flagged. There is a cattle-pit at north end of switch. Above that the track is fenced."

Re-examined: "The train was about eighty or one hundred yards north of telegraph office. The cow was six or eight feet in advance of the train, running between track and fence. The cow did not run on railroad until she attempted to cross the track between the buildings. The platform of the telegraph office extends to the track. The cow was struck, about the middle of the platform."

William Myers, sworn, testified: "The next evening after the cow was killed some of the section hands came to my shop. I took the gun to the woods. They killed the cow and skinned her. I saw the train. It was running fifteen miles per hour. I saw the train two hundred and fifty yards above the telegraph office. No effort was

made to stop it. I think they could have stopped the train. I have worked about engines some; have been fireman. The hide was sold to Fisher. The cow was crippled by the train, so as to be incurable. Her foreleg was cut off. No one was paying any attention to her, and the section hands killed her. I don't know what authority they had."

Joseph Ballard, sworn, testified: "I was present when the cow was killed; was standing on the platform at Fisher's store; saw train coming from the north. The cow ran along in front of the train, on west side of track. She came to platform of telegraph office, where she attempted to cross, and was struck. The cow ran about one hundred and fifty yards, in front of train. It was at speed of fourteen or fifteen miles an hour. Have run on an engine some. Saw no effort to stop train. Speed was not slackened. They could have slackened the speed so, probably, the cow would have been unharmed. The cow was about ten feet in front of the engine when I first saw her. I was on east side of track; cow on west; cow worth about forty dollars. Her left foreleg was broken and mangled up, and her shoulder-blade was fractured or broken."

Cross-examined: "I was standing on east side, on platform of store, just north of county road. The telegraph office is on the west side, just north of county road. The switch runs on east side of track, about two hundred and fifty yards north of county road. The train and cow were very nearly even when they got in front of me. It is across the switch and track both, to the telegraph office. The switch runs along depot, so freight can be rolled off on platform."

William Moffit, sworn, testified: "I saw engine fifty feet north of store; cow about ten or twelve feet in front of train, on west side of track."

Henry Fisher, sworn, testified: "One of the section hands came to me with the hide. I bought it and paid

him for it; paid three dollars, or three dollars and sixty-five cents."

Daniel Caudle testified: "The cow was worth forty dollars."

This was all the evidence given in the case.

The evidence in this case comes before us with all the presumptions of inference in its favor, and against the party demurring to it. *Fouch* v. *Wilson, ante,* p. 64. *Bailey* v. *Boyd,* 59 Ind. 292. Yet we believe, with all these advantages, it is insufficient to sustain the judgment. It is clear, that, at the place where the cow was killed, the appellant could not legally fence the railroad. There is no case, therefore, made under the statute; and, to make a case against the appellant without the aid of the statute, it must appear that the cow was killed by the negligence or carelessness of the appellant, and without contributory negligence on the part of the appellee. The first that the evidence shows us of the cow, she was running at large between the railroad track and a fence fifteen feet west of it, where she had no right to be, as far as the evidence shows us. This is *prima facie* negligence on the part of the owner. If she was there without the negligence of her owner, it was for him to show it; and, not having done so by the evidence, he can not recover. It was incumbent on the appellee to make good the averment in his complaint, that the killing was done without fault on his part. Not founding his action upon the statute in that paragraph of his complaint, it was necessary to the sufficiency of it to make the averment, and necessary that the averment should be proved, to entitle him to recover. Admitting, therefore, that the evidence shows that the cow was killed by the negligence of the appellant, it is not sufficient, because it does not show that she was killed without the negligence of the appellee. This question has been so frequently decided that we do not cite the authorities; but see *The Indianapolis, etc., R. R. Co.* v. *Harter,* 38 Ind. 557.

The judgment is reversed, at the costs of the appellee, and the cause remanded, with directions to sustain the demurrer to the evidence, and render judgment in favor of the appellant.