500     SUPREME COURT OF INDIANA.

The Pittsburgh, Cincinnati and St. Louis Railway Company *v.* Stuart.

THE PITTSBURGH, CINCINNATI AND ST. LOUIS RAILWAY COM-
PANY *v.* STUART.

No. 6936.

ANIMALS.—*Trespass.—Animal Straying upon Land of Another.—Common
    Law.—County Commissioners.*—The common-law rule, that the owner of
    " animals is obliged to keep them upon his own grounds, and is a wrong-
    doer if he suffer them to stray upon the grounds of others," is a part of
    the law of this State, subject to the single exception created by the act of
    May 31st, 1852, 1 R. S. 1876, p. 64, and amendments thereof, authorizing
    county commissioners to direct, by an order of the board, what animals
    may pasture or run at large on unenclosed lands or public commons within
    the bounds of any township in their respective counties.

SAME.—*Railroad.— Wilful and Negligent Injury of Animal.—Fence.*—An
    action against a railroad company, for damages sustained by the plain-
    tiff from the killing or injury of the plaintiff's animals, on the defend-
    ant's railroad track, through the alleged careless, negligent and wilful acts
    of the defendant's employees, is governed by the rules of the common
    law; and the fact as to whether or not the defendant's track was fenced
    does not enter into the case.

SAME.—*Injury of Stray Animal.—Presumption.*—In such action, the evi-
    dence showed that the plaintiff's animal had strayed upon the defendant's
    track, and, despite the slackening of the speed of the defendant's train,
    and the sounding of the whistle of its locomotive, the animal, instead of
    stepping off the track where it would have been safe, had run ahead of
    the train until it had jumped into a bridge on the track and broken its leg.
    There was no evidence of any order of the board of commissioners, di-
    recting what animals might be permitted to run at large.

*Held,* that the defendant was not liable.

*Held,* also, that it must be presumed that, at the time and place where such
    injury occurred, the common-law rule prevailed, and that such horse was
    then and there trespassing upon the track of such railroad.

From the Hancock Circuit Court.

*J. P. Siddall, W. D. Foulke, W. R. Hough* and *J. L.
Rupe,* for appellant.

*C. G. Offutt* and *W. H. Martin,* for appellee.

HOWK, J.—This was a suit by the appellee against the
appellant, in a complaint of two paragraphs, to recover
damages for injuries sustained by a certain bay horse,

owned by the appellee, on the appellant's railroad. To each of the paragraphs of said complaint, the appellant's demurrer for the want of sufficient facts was overruled by the court, and its exceptions were duly saved to these decisions. The appellant then answered by a general denial of the complaint.

The issues joined were tried by a jury, and a verdict was returned for the appellee, assessing his damages in the sum of one hundred and forty dollars; and, the appellant's motion for a new trial having been overruled, and its exception entered to this ruling, judgment was rendered on the verdict.

In this court, the appellant has assigned, as errors, the decisions of the circuit court in overruling its demurrers to each of the paragraphs of the complaint, and in overruling its motion for a new trial. The only questions discussed by the appellant's counsel, in their brief of this cause, are such as arise under the alleged error of the court in overruling the motion for a new trial.

In this motion, the following causes were assigned by the appellant for such new trial:

1. Because the verdict was not sustained by sufficient evidence;

2. Because the verdict was contrary to law; and,

3. Because the court erred in each of its instructions to the jury.

Before considering any of the questions presented for decision in this cause, it is proper and necessary that we should first give a summary of the facts stated by the appellee in his complaint, as his cause of action. In the first paragraph of his complaint, the appellee alleged, in substance, that on the 16th day of May, 1877, the appellant, by its agents and servants, was engaged in running a locomotive and train of cars on its railroad, in and through Hancock county, Indiana, and while so engaged the appel-

lant, by its agents and servants, wilfully, carelessly and negligently caused said locomotive and cars to injure, wound and damage a certain bay horse, without any fault of the appellee, by then and there wilfully, carelessly and negligently running and pursuing said horse on the track of said railroad, at a great rate of speed, for about one and one-half miles to a bridge, and wilfully, carelessly and negligently causing said horse to jump into said bridge, thereby breaking his leg and otherwise greatly injuring and damaging him, and rendering him of no value; and that said horse was the appellee's property, and was then and there on the track of said railroad without his fault, to his damage in the sum of one hundred and fifty dollars.

The second paragraph of the complaint contained substantially the same allegations as the first paragraph; the only material difference between the two being that, in the second paragraph, it was alleged that the appellant used and operated the railroad, and not that it owned such railroad, as in the first paragraph.

The appellee did not allege, in either paragraph of his complaint, that the appellant's railroad was not securely fenced in, and such fence properly maintained, at the place where his horse got upon the railroad track. In other words, the appellee did not sue the appellant under the act of March 4th, 1863, providing compensation to the owners of animals killed or injured by the cars, etc., of any railroad company in this State; but the appellee sued in each of the paragraphs of his complaint to recover damages for an injury to his horse, caused, as alleged, by the wilful, careless and negligent conduct of the agents and servants of the appellant, in running and pursuing said horse on and along the track of the appellant's railroad, when the horse was on said track without fault of the appellee. In each paragraph of his complaint, the appellee has stated a cause of action at the common law against the appellant,

and has sought to enforce its common-law liability for an injury resulting, as alleged, from the wilful, careless and negligent acts of its agents and servants, in the running of its train of cars on the track of its railroad. In such a case, the parties on either side are remitted exclusively to their common-law rights and liabilities, without regard to the provisions of the statute above referred to. In other words, if the appellant was clearly liable to the appellee at common law for the injury to his horse, as stated in the complaint, then the facts, if they existed, that the track of its railroad was securely fenced in, and such fence properly maintained by the appellant, would not exempt it from such common-law liability. On the other hand, if the appellant was not liable to the appellee at common law for such injury to his horse, then he could not in this action, under either paragraph of his complaint, recover from the appellant damages for such injury, even though the track of its railroad were wholly unfenced.

" At common law, the owner of animals is obliged to keep them upon his own grounds, and is a wrong-doer if he suffer them to stray upon the grounds of others. This, as a general rule, is the law of Indiana." *The Indianapolis, etc., Railroad Co.* v. *Harter*, 38 Ind. 557 ; *The Jeffersonville, etc., Railroad Co.* v. *Huber*, 42 Ind. 173 ; and *The Jefferson- ville, etc., Railroad Co.* v. *Adams*, 43 Ind. 402. The only qualification of this common-law rule is found in the provisions of an act, approved May 31st, 1852, for the regulation of the running at large of all kinds of animals; whereby the boards of commissioners of the different counties of this State were authorized to direct, by an order entered on the order book of the board, what kinds of animals should be allowed to pasture or run at large upon the uninclosed land, or public commons, within the bounds of any township in their respective counties. 1 R. S. 1876, p. 64. The 1st section of this act was amended

by an act approved March 29th, 1879. Acts 1879, p. 62. But neither the original act nor the amended section can have any possible bearing upon the case now under consideration, as it is not claimed that the board of commissioners of Hancock county had ever directed, by an order entered on its order book, what kinds of animals might pasture or run at large in any township in said county.

It must be assumed, therefore, that, at the time and place where the appellee's horse was injured, the common-law rule prevailed, and that the horse was then and there trespassing upon the track of the appellant's railroad. This is so, as it seems to us, even though it appeared that the appellee had used reasonable care and diligence to keep his horse upon his own grounds and within his own enclosure, and that the horse had escaped therefrom without his knowledge or consent. In the case of *The North Pennsylvania Railroad Co.* v. *Rehman*, 49 Pa. St. 101, it was decided by the Supreme Court of Pennsylvania, that an owner of mules killed upon the track of a railroad company by an engine and cars can not recover damages therefor, though they escaped from a properly fenced enclosure without his knowledge, and were on the highway at its intersection with the track, at the time of the accident. In the opinion of the court, it was said by THOMPSON, J.: "Whether, therefore, the plaintiff's mules escaped from an enclosed field or not, in view of the trespass on the defendants' road, I do not think makes any difference in this case. It was undisputed, that they were on the defendants' road without license. If so, they were there wrongfully—were trespassers. How can the owner separate his case from the wrong done by his cattle? Intention, nay, effort to prevent, will not make their occupancy of the track of the road lawful. If they were in fault, it was because their owner was in fault in not restraining them." Substantially the same doctrine is laid down

in each of the following cases :   *Munger* v. *The Tonawanda R. R. Co.*, 4 N. Y. 349 ; *The Tonawanda R. R. Co.* v. *Munger*, 5 Den. 255 ; *Jackson* v. *Rutland, etc., Railroad Co.*, 25 Vt. 150 ; *Price* v. *The New Jersey R. R., etc., Co.*, 2 Vroom, 229 ; and S. C., 3 Vroom, 19.

In the case last cited, as reported in 2 Vroom, on page 237, it was said by the court: "If the defendants" (the railroad company) "had brought an action against the plaintiff for the invasion of their track by his horses, on the occasion in question, it would have afforded no defence to such suit for the plaintiff to have shown that his field, from which they escaped, was well fenced and that the animals had been guarded with the utmost watchfulness. The invincible answer to such plea would have been a reference to the inexorable rule of law, which required him to keep his cattle off the land of another. It seems to me impossible to hold that the plaintiff has not fulfilled his legal duty, and yet that he is not legally culpable ; that he is a trespasser in failing to keep his cattle off the land of the defendants, and yet although a trespasser, he is guilty of no neglect in the eye of the law. If he had wilfully driven his horses onto the railroad track, it hardly would have been pretended, that he could have claimed to be indemnified by the company for his loss, by reason of the negligence of their servant. But the introduction of the element of the plaintiff's volition in the causation of the wrong, does not alter its nature ; it is a trespass, whether it proceed from his want of legal care or from the direct action of his will. The trespass of the cattle then being in law imputable to the plaintiff as the result of his own negligence—and as without such trespass the damages would not have accrued—it seems to follow unavoidably that this suit will not lie. The plaintiff is forbidden by law, to ask to be compensated for a loss which, in fact, was the product of his own culpability."

In that case, as in the case now before this court, it was claimed that the engineer in charge of the engine "saw the horses in time to stop the train." On this point the court said: "Was he under any legal obligation to do this in favor of a trespasser? It is not pretended that there was any thing wilful in the act; but the complaint is that the defendants' agent, supposing the horse would pass off the track, continued his course with unabated speed. Was such agent, by such conduct, negligent in any legal sense? or, to put the case more correctly, were the defendants negligent in employing such servant? To my mind it would be most unreasonable, to push the doctrine of *respondeat superior* to such an extreme. The true theory is, that the principal undertakes that the servant he employs will be so far prudent and circumspect in the course of his employment, as to injure no one who preserves his legal situation with regard to such servant."

The case of *The Tonawanda Railroad Co.* v. *Munger*, 5 Denio, 255, was an action founded on the alleged negligence of the servants of the railroad company, in so running an engine on its railway as to kill the plaintiff's oxen. On page 264, the court said: "It is a well settled rule of law, that such an action can not be sustained if the wrongful act of the plaintiff co-operated with the misconduct of the defendants or their servants to produce the damage sustained. I do not mean that the co-operating act of the plaintiff must be wrong in intention, to call for the application of this principle, for such is not the law. The act may have been one of mere negligence on his part, still he can not recover. Or his beast, while trespassing on the land of another person, and that without the consent or knowledge of its owner, may have been damnified through some careless act of the owner of the land, yet the fact of such trespass constitutes a decisive obstacle to any recovery of damages for such an injury. It is, strictly speaking, *damnum absque injuria.*"

## NOVEMBER TERM, 1880. 507

The Pittsburgh, Cincinnati and St. Louis Railway Company *v.* Stuart.

The case last cited was appealed from the judgment of the Supreme Court, to the Court of Appeals, of New York, and the opinion of the latter court is reported in 4 N. Y. 349. After an able and exhaustive examination of the questions in the case, and of the law applicable thereto, the opinion of the Court of Appeals concludes, on page 360, as follows : " We are led to the conclusion, that as the defendants were in the lawful exercise and enjoyment of their rights, and would have done no injury to the plaintiff, if his oxen had not strayed on the track of the railway ; and as they were there without right, in respect to them the law did not enjoin it as a duty on the defendants to take care not to injure them. The want therefore of such care was not in judgment of law a fault to be attributed to the defendants ; but if it could be so considered, the plaintiff having also been in fault, by which he contributed to produce the injury, is not entitled to recover."

In the case at bar, it is not necessary that we should endorse or approve of the statements of the law enunciated in the cases decided by the courts of other States, as contained in the foregoing quotations therefrom, though it would seem that the law as there stated is the logical result or sequence of the common-law rule, admitted to be a part of the law of this State, that " the owner of animals is obliged to keep them upon his own grounds, and is a wrong-doer if he suffer them to stray upon the grounds of others." We have already seen, that the only statutory exception to this common-law rule, in this State, is not claimed to have been applicable to any township in Hancock county.

We have carefully examined the evidence in the record, and we are clearly of the opinion, that this evidence did not even tend to prove that the appellee's horse was injured by or through the carelessness and negligence, and certainly not wilfulness, of the agents or servants of the

appellant, in charge of its engine and cars. Indeed, it seems to us, that the evidence showed that the appellant's employees, in charge of its train of cars, did all that they could be reasonably expected to do, under the circumstances of the case, to avoid any injury to the appellee's horse. They were in charge of a passenger train, and their first and highest duty was to the passengers on their train, not only for their safety, but for such speed and despatch in their carriage as would enable them, if they so desired, to make close and certain connections with the trains of other roads. The appellee's horse had escaped from his enclosure, and was trespassing on the track of appellant's road. In this state of the case, the appellant certainly owed no such duty to the appellee as required the stoppage of its train, in violation of its duty to its passengers, and that its employees in charge of the train should go forward and carefully lead or drive the horse from the track of its road. The appellant's agents and servants slackened the speed of the train, so as to avoid any collision with appellee's horse, and they sounded the locomotive whistle, with the view of scaring the horse from the railroad track. Certainly the appellant's duty to the appellee, under the facts of this case, did not require that its agents and servants should do aught more, and it was not carelessness or negligence, much less wilfulness, on their part, to refrain from doing any thing more than they did, to avoid any injury to the appellee's horse. The fact was, that the horse could have easily left the track of the railroad, but, instead of doing so, it jumped into a railroad bridge and broke its leg.

We are of the opinion, that the appellant can not be held liable to the appellee, under the common law, for this injury to his horse, and that the verdict of the jury, therefore, was not sustained by sufficient evidence, and was contrary to law. For these reasons, the court erred,

we think, in overruling the appellant's motion for a new trial.

The judgment is reversed, at the appellees' costs, and the cause is remanded, with instructions to sustain the motion for a new trial, and for further proceedings not inconsistent with this opinion.