The Chicago, St. Louis and Pittsburgh Railroad Company v. Nash.

Filed May 2, 1891.

---

## No. 3.

## THE CHICAGO, ST. LOUIS AND PITTSBURGH RAILROAD COMPANY v. NASH.

RAILROAD.—"*Wilfully and Willingly.*"—*Intentionally Killing Animal.*—A complaint which charges that the defendant "wilfully and willingly killed" the plaintiff's animal is sufficient to show an intentional killing.

SAME.—*Wilful Injury.—Complaint.—Malice.—Contributory Negligence.—Trespassing Animal.*—In a complaint for a wilful injury there must be language used which can be construed as charging that the defendant had an intent, either actual or constructive, to commit the injury; but it is not necessary to use words indicating an act amounting to a crime or importing actual malice toward the owner of the property injured; nor to show that the plaintiff was without contributory negligence, nor that the property injured was rightfully at the place of injury.

SAME.—*Killing Animal at Crossing.*—An inference of contributory negligence on the part of the plaintiff does not arise as a legal conclusion from the averment that the animal was negligently killed at a railroad crossing, when accompanied by the averment that the plaintiff was without fault.

SAME.—*Order of County Commissioners Permitting Cattle to Run at Large.—Injury at Crossing.*—Where an order of the board of county commissioners authorizes an animal to run at large, the owner is not prevented from recovering for a negligent injury to the animal at a public railroad crossing by the mere fact that he permitted it to run at large, such fact not being imputed to him as a contributory fault.

SAME.—*Owner at Fault.*—If the owner of an animal carelessly and rashly permit it to roam at large, unattended, in the vicinity of a railroad where the company can not be required to fence in its track, and it is there negligently injured by such company, he can not recover, for he

The Chicago, St. Louis and Pittsburgh Railroad Company v. Nash.

is chargeable with contributory negligence, although an order of the board of county commissioners then in force allowed such an animal to run at large. In such an instance he is chargeable with actual fault.

SAME.—*Turning Animal Out Unattended.—No Recovery.— Wilful Injury.*—If the owner of an animal permit it to run at large unattended, whether it roam in the vicinity of a railroad or elsewhere, in the absence of an order of the board of county commissioners permitting such an animal to run at large, and it is negligently injured at a railroad crossing by the company, his fault in turning it out to run at large will prevent a recovery by him for the injury; but otherwise if the injury was inflicted wilfully.

SAME.—*Animal Escaping from Enclosure.*—Whether there be an order of the board of county commissioners allowing animals to run at large or not, if the owner of such an animal carefully confines it in a well-fenced enclosure or other properly secured place, and without his knowledge or fault it escapes therefrom and wanders unattended to a public railway crossing, and is there negligently injured by the company, he may recover for such injury.

REINHARD and NEW, JJ., dissent.

SAME.—*Lookout for Animals Near or Approaching Crossings.*—An engineer in charge of a train must use reasonable diligence to discover animals near or approaching crossings; and if the animal could have been seen by the use of ordinary diligence in time to have avoided the injury, the company will be liable, the owner of the animal not being guilty of contributory negligence.

NEGLIGENCE.—*Pleading.—" Without Fault."—Sufficiency of Allegation.*—The allegation that the plaintiff was "without fault," has a technical significance, and admits proof of any facts tending to show its truth, and is sufficient, unless the facts specially pleaded clearly show that he was chargeable with contributory negligence.

From the Porter Circuit Court.

*N. O. Ross* and *G. E. Ross,* for appellant.
*T. J. Wood* and *M. Wood,* for appellee.

BLACK, C. J.—This was an action brought by the appellee against the appellant to recover the value of a horse killed by the latter. The complaint was in two paragraphs. The appellant demurred separately to each paragraph. The demurrers were overruled, and these rulings are assigned as errors.

The allegations of the first paragraph, reciting them in substance, so far as is necessary to illustrate appellant's ob-

jections, were that the appellant, by its agents and employes, wilfully and willingly ran its morning passenger and mail train and locomotive, going south, at and against the animal, at a point on its line of railroad about one-half mile north-west of the town of Crown Point; and then and there said agents and employes of the appellant did wilfully and willingly, with said locomotive, and train of cars attached thereto, strike, and they did then and thereby wilfully and willingly kill said animal, etc.; which point, on said railroad, of contact and killing was and is in Center township, of Lake county, in this State. It was further averred that the killing of the animal was without the appellee's fault, carelessness, or negligence, and that he did not in any way contribute to the same, etc.

Counsel for the appellant insist that the allegation in this paragraph, that the appellant's servants " wilfully and willingly killed " the animal was not sufficient to show an intentional killing, and that in addition to such an allegation it was necessary to allege that the killing was wrongful.

The word " wilfully," in its ordinary uses, means by design; on purpose; with set purpose; intentionally; in an obstinate manner; as being governed by the will, without regard to reason, or without yielding to reason.

The word " willingly " is a weaker word, meaning voluntarily; readily; without reluctance; in the manner of being ready to do an act; of free choice; with one's free choice or consent; with a mind inclined or favorably disposed to an act.

To say that an act has been done wilfully and willingly, is to indicate that it has been done intentionally, and implies that the person doing it knew what he was doing, and acted from choice as a free agent.

Such an allegation is inconsistent with the idea of accident, mistake, inadvertence, negligence. It implies that the will was a party to the act, and that the act was done, not

because of doubt or uncertainty as to the right or proper course to be pursued, but without adequate reasonable cause.

The common use of the word " wilfully " in the English language is in a sense denoting with intention. CAMPBELL, C. J., in *Regina* v. *Badger*, 6 E. & B. 137.

The expression in a statute, " wilfully hold over," was held to imply, not only a holding over after the term has expired, but a holding over in the absence of a *bona fide* belief on the part of the tenant that he is justified by the circumstances in so doing. COCKBURN, C. J., in *Swinfen* v. *Bacon*, 6 H. & N. 846.

" ' Wilfully,' in the ordinary sense in which it is used in statutes, means not merely ' voluntarily,' but with a bad purpose." *Commonwealth* v. *Kneeland*, 20 Pick. 206 (220).

"A wilful act is one done designedly, intentionally or purposely, as contradistinguished from accident, inadvertence or absence of intention or design." *Commonwealth* v. *Perrier*, 3 Phila. 229 (232).

"Wilful misconduct means misconduct to which the will is a party, something opposed to accident or negligence." *Lewis* v. *Great Western R. W. Co.*, 3 L. R. Q. B. Div. 195 (206).

Doing, or omitting to do, a thing " knowingly and willingly," implies not only a knowledge of the thing, but a determination with a bad purpose to do it, or to omit doing it. *Felton* v. *United States*, 96 U. S. 699.

" The word *wilful* frequently means more than a mere intention. * * * It sometimes is used to mean *perverse*, deliberate design, and malice." *Wales* v. *Miner*, 89 Ind. 118 (128).

In *Pittsburgh, etc., R. W. Co.* v. *Stuart*, 71 Ind. 500 (507–8), HOWK, J., uses the following language : " We are clearly of the opinion that this evidence did not even tend to prove that the appellee's horse was injured by or through the carelessness and negligence, and certainly not wilfulness, of the agents or servants of the appellant.''

In *Carter* v. *Louisville, etc., R. W. Co.*, 98 Ind. 552 (555),

speaking of a complaint, it was said : " There was, according to the averments, that ' something more than mere negligence,' which evinces wilfulness, a purpose to injure."

It is true, that to entitle one to recover for an injury to which his own negligence has contributed, the injurious act must have been purposely and intentionally committed with a design to produce injury ; or it must have been committed under such circumstances as that its natural and probable consequence would be to produce injury to others. There must have been, in such case, an actual or a constructive intent to commit the injury. In a complaint for such an injury there must be language which can be construed as charging that the person or persons who did the injurious act had an intent, either actual or constructive, to commit the injury. *Belt R. R., etc., Co.* v. *Mann,* 107 Ind. 89.

" There may be a wilful act, in a legal sense, without a formed and direct intention to kill or wound any particular person. There may, in other words, be a constructive or an implied intent without an express one." *Palmer* v. *Chicago, etc., R. R. Co.,* 112 Ind. 250.

" As a matter of evidence, proof that the misconduct of the defendant was such as to evince an utter disregard of consequences, so as to imply a willingness to inflict the injury complained of may tend to establish wilfulness on the part of the defendant." *Cincinnati, etc., R. R. Co.* v. *Eaton,* 53 Ind. 307.

The reports abound in the expressions, " wilful injury," " wilful misconduct," " injury wilfully inflicted," " wilful or purposed," " purposely or wilfully," " wilful tort," " wilful or intentional wrong," " wilfulness," etc. ; and the word " wilfully," used as in the paragraph of complaint under consideration, has such an understood and accepted meaning in pleading that by its use in such manner the act in connection with which it is used is characterized as having been intentionally, purposely and tortiously done.

It is not necessary in such an action to use words indicat-

ing an act amounting to a crime or importing actual malice toward the owner of property injured.

This objection to the complaint is not well taken. The same may be said of the objection made by the appellant, that the complaint does not show that the animal was right-fully on its track. In a complaint for wilful injury, it is not necessary to show that the plaintiff was without con-tributory fault, or that an animal so injured was rightfully upon the track. *Town of Salem* v. *Goller*, 76 Ind. 291; *Norris* v. *Casel*, 90 Ind. 143; *Terre Haute, etc., R. R. Co.* v. *Graham*, 95 Ind. 286; *Chicago, etc., R. R. Co.* v. *Hedges*, 105 Ind. 398; *Palmer* v. *Chicago, etc., R. R. Co., supra; Ohio, etc., R. W. Co.* v. *Walker*, 113 Ind. 196; *Hanna* v. *Terre Haute, etc., R. R. Co.*, 119 Ind. 316.

It is also contended that this paragraph does not suffi-ciently allege that the animal was upon the railroad track.

It is alleged that the appellant ran its morning passenger and mail train and locomotive, going south, at and against, etc., at a point on its line of railroad, etc., which point on said railroad of contact and killing, was, etc. We think this was sufficient.

There was no error in overruling the demurrer to the first paragraph.

In the second paragraph it was alleged that the appellant, by its agents and employes running and operating its morn-ing passenger train going east, on, etc., in, etc., by the loco-motive and cars attached thereto, ran against, over and killed the animal, etc.; that said agents and employes as aforesaid carelessly and negligently ran said locomotive and cars over and killed the said animal, without any fault or want of care by the appellee, and he did not contribute to said injury; that said animal was killed at a road crossing, and she was in plain view of the engineer on said track for more than one-half a mile, and he, knowing that said animal was on the railroad, did not give any alarm of the whistle or any danger signal, to frighten said animal from the track, and did not

slacken the speed of his train, but ran against her at full speed and killed her, etc.

It is insisted by the appellant that the specific allegations of this paragraph overcome the general allegations of negligence of the appellant and freedom from fault on the part of the appellee. It is contended that the specific allegations admit as a fair inference therefrom that the appellee's fault contributed to the killing of the animal, and fail to show facts constituting negligence on the part of the appellant.

It is argued that the allegation that the animal was killed at a road crossing shows that the appellee was guilty of contributory negligence. It was not impossible for the animal to be at a road crossing without the fault of the appellee; and he alleged that he was without fault or want of care, and did not contribute to the injury.

Counsel have quoted a well expressed statement of the law as established in this State, from the opinion in *Hanna* v. *Terre Haute, etc., R. R. Co., supra,* concerning the contributory negligence of owners of animals who abandon them to the hazard of being injured on a railroad crossing by permitting them to roam at large in the vicinity of such a place, but that statement was made in commenting upon the evidence, and not in reference to a complaint.

In such a pleading the allegation that the plaintiff was without fault, like the general averment of negligence on the part of the defendant, has a technical significance, and admits proof of any facts tending to show its truth. *Town of Salem* v. *Goller, supra.*

In that case, an action to recover for a personal injury received by falling from a sidewalk into an open cellar, the fact that the complaint showed that the plaintiff was blind was not allowed to overcome the general averment that he was without fault or negligence.

An inference of contributory negligence on the part of the appellee does not arise as a necessary legal conclusion from the mere fact that the animal was upon a railroad cross-

ing, and the averment of that fact in the complaint is not inconsistent with the general allegation that the appellee was without fault, and does not overcome its effectiveness as a material allegation of the pleading. *Pittsburgh, etc., R. W. Co.* v. *Wright,* 80 Ind. 182; *Louisville, etc., R. W. Co.* v. *Head,* 80 Ind. 117; *Wilson* v. *Trafalgar, etc., Co.,* 83 Ind. 326; *Toledo, etc., R. W. Co.* v. *Brannagan,* 75 Ind. 490; *Rogers* v. *Overton,* 87 Ind. 410.

The general averment that the plaintiff was without fault is sufficient, unless the facts specially pleaded clearly show that he was chargeable with contributory negligence. *Ohio, etc., R. W. Co.* v. *Walker, supra.*

If the specific allegations unnecessarily added to the general averments in this paragraph would not be sufficient of themselves to show that the injury was occasioned by the appellant's negligence, as to which we make no particular examination and express no opinion, they do not show the contrary necessarily. If not full enough of themselves, they are not incompatible with the general allegation of negligence, which is itself sufficient. *Boyce* v. *Fitzpatrick,* 80 Ind. 526; *Louisville, etc., R. W. Co.* v. *Jones,* 108 Ind. 551; *George H. Hammond & Co.* v. *Schweitzer,* 112 Ind. 246; *Ohio, etc., R. W. Co.* v. *Walker, supra.*

The appellant's counsel earnestly and forcibly contend that the verdict is not sustained by sufficient evidence. There certainly was evidence tending to prove want of ordinary care on the part of the employes of the appellant upon the locomotive. There was evidence that it was a clear, bright day; that at the distance of half a mile or more before they reached the crossing, and while passing over that interval, they might have seen the animal plainly in the immediate vicinity of the railroad crossing, grazing and approaching the crossing; and that for the distance of eighty rods they might have seen the animal distinctly, in the place and position of danger in which she was struck; and yet that they

did not give the usual alarms, or stock signals, to frighten her away.

The engineer testified that he was looking straight ahead; that he did not see the animal until the train was about one hundred feet from the crossing; that the first intimation he had was the fireman's saying, " Look out for the horse! " and that he then put on the air-brake. The fireman was not a witness. We can not say that the evidence did not authorize a finding of want of ordinary care on the part of the appellant.

But counsel for appellant insist that, as it appeared that the animal was killed upon a public crossing, there could be no recovery except for a wilful killing; that the animal was shown to be a trespasser upon appellant's right of way, and that therefore its owner, the appellee, was chargeable with contributory negligence.

Counsel say that the Supreme Court of this State " has often and uniformly held that if the owner of stock *permits* it to run at large, and it is injured upon a highway crossing, he can not recover, even though the railroad company is guilty of negligence in the infliction of the injury." And counsel ask: " Should the rule be different when the animal escapes from the owner?" There was no evidence of an order of the board of county commissioners allowing animals to run at large.

The evidence showed that on the morning of the day on which the animal was killed, the appellee left her at his home, about twenty rods from the railroad, in a yard enclosed with a good fence, where he had been keeping her for a week or or two, she being heavy with foal; and that she was killed about half past ten o'clock in the forenoon.

The question is presented whether the owner of a domestic animal, which has escaped from a well-fenced enclosure where he has confined it, and which has strayed to a railway track, at a public crossing, and which has there been killed by a passing train through the negligence of the employes

of the railway company managing the train, can recover for such injury, no order of the county board allowing such an animal to run at large being shown.

There has been lack of harmony between the decisions upon this subject in different jurisdictions.

Although there may be found in the opinions of judges in this State *dicta* which favor the view that in such case the owner can not recover, we do not find that any case has been decided upon such theory.

It has been decided many times that the common law obligation of the owner of domestic animals not to suffer them to run at large is in force in this State, where there is no order of the board of county commissioners allowing such animals to run at large.

It has often been held that where the owner of such animals permits them to run at large in the vicinity of a public railway crossing, his negligence in so doing will be imputed as contributory fault, and will prevent recovery by him for injury to the animals by passing trains, unless the injury be wilful.

The decisions of courts of other States holding the owner of animals chargeable with contributory fault because of their presence on a public railway crossing, though he had used reasonable care and exercised reasonable diligence to keep the animals upon his own premises in a properly fenced enclosure, from which they had escaped without his knowledge or consent, have been referred to with approval by judges of this State. Also, it has been said to be doubtful as to whether the owner has a right to recover in such a case for negligent injury. But the decisions in this State have proceeded upon some other grounds.

We think it may be said to be the law in this State, that where an order of the board of county commissioners authorizes the animal to run at large, the owner is not prevented from recovering for negligent injury to the animal at a public railway crossing by the mere fact that he permitted it to run

at large. That will not be imputed as contributory fault. To preclude recovery, he must have been at fault, and being authorized to turn out his animal to run at large, the mere fact that the animal has gone unattended to a railway crossing will not constitute negligence in the owner. But if he voluntarily, carelessly and rashly permit it to roam at large, unattended, in the vicinity of the railroad where the railroad company can not be required to fence in its track, he will be chargeable with contributory negligence, notwithstanding the existence of such an order of the county board, if the animal be killed at such a place on the railroad track by the negligent management of a train passing thereon. The mere act of the animal is not imputed to its owner as contributory negligence in such a case; he is chargeable with actual fault.

If there be no such order of the county board, it will be the owner's own fault if he voluntarily permit his animal to run at large unattended, whether it be to roam in the vicinity of a railroad or elsewhere; and if the animal so turned out to run at large wander to a railway crossing upon a highway, and be there injured by a passing train, the owner's fault in turning it out to run at large will prevent recovery by him for the injury, unless it has been inflicted through the actual or implied wilfulness of the agents or employees of the railroad company in the management of the train.

Whether there be such an order of the county board or not, if the owner of a domestic animal carefully confines it in a well fenced enclosure or other properly secured place, and without his knowledge or actual fault the animal escapes therefrom and wanders unattended to a public railway crossing, and be there injured by a passing train through want of ordinary care on the part of the agents or employes of the railway company in the management of the train, the presence of the animal upon the crossing will not be imputed to its owner as his contributory fault, and he may recover of the railroad company for his loss.

In such case, the animal loitering upon the track at a public crossing is no more a trespasser than is the animal in the case where the owner, under authority of an order of the county board, has turned it out to run at large, and it wanders to and loiters upon the crossing without his fault. The railroad company has not the exclusive right to the possession of a public crossing. It has the right of passage, and it may drive or frighten the animal from its track, but in doing so it is not relieved from the obligation to exercise ordinary care. The company is not bound to undergo unreasonable delay which will prevent the making of connections or the keeping of schedule time, or to risk the danger of collision between its trains. It is simply bound to deal with the animal with reasonable care.

The paramount duty of the railroad company is toward its passengers. It also should be held to reasonable care concerning animals which may be upon its crossing without fault on the part of their owners. It can not be said that it owes no duty whatever in such case other than not to wilfully injure property.

These rules are reasonable and fair both to the railroad company and to the owners of injured animals. They do not unreasonably interfere with the transaction of the business of the company. They tend to secure care and diligence on the part of the owners of animals, and to promote the safety of passengers and railway employes engaged in the running of trains. They are in harmony with the tendency of the decisions in many other jurisdictions.

Whether they be based upon the wisest consideration of the relative rights and duties of railroad companies and the owners of domestic animals or not, we are bound to state the law as we find it, and that such is the law in this State on this subject we think must be concluded from a careful examination of the decisions. *Lafayette, etc., R. R. Co.* v. *Shriner*, 6 Ind. 141 ; *Indianapolis, etc., R. R. Co.* v. *Kinney*, 8 Ind. 402 ; *Indianapolis, etc., R. R. Co.* v. *Caldwell*, 9 Ind.

397; *Indiana Central R. W. Co.* v. *Gapen*, 10 Ind. 292; *Knight* v. *Toledo, etc., R. W. Co.*, 24 Ind. 402; *Indianapolis, etc., R. R. Co.* v. *McClure*, 26 Ind. 370; *Michigan, etc., R. R. Co.* v. *Fisher*, 27 Ind. 96; *Indianapolis, etc., R. R. Co.* v. *Harter*, 38 Ind. 557; *Jeffersonville, etc., R. R. Co.* v. *Huber*, 42 Ind. 173; *Jeffersonville, etc., R. R. Co.* v. *Adams*, 43 Ind. 402; *Indianapolis, etc., R. R. Co.* v. *Hamilton*, 44 Ind. 76; *Pennsylvania Co.* v. *Krick*, 47 Ind. 368; *Jeffersonville, etc., R. R. Co.* v. *Underhill*, 48 Ind. 389; *Cincinnati, etc., R. R. Co.* v. *Street*, 50 Ind. 225; *Indianapolis, etc., R. W. Co.* v. *Caudle*, 60 Ind. 112; *Pittsburgh, etc., R. W. Co.* v. *Stuart*, 71 Ind. 500; *Wabash, etc., R. W. Co.* v. *Nice*, 99 Ind. 152; *Cincinnati, etc., R. W. Co.* v. *Hiltzhauer*, 99 Ind. 486; *Lyons* v. *Terre Haute, etc., R. R. Co.*, 101 Ind. 419; *Hanna* v. *Terre Haute, etc., R. R. Co.*, *supra; Louisville, etc., R. W. Co.* v. *Green*, 120 Ind. 367.

Under the circumstances disclosed by the evidence, it was the duty of appellant's servants upon the locomotive to have seen the animal at such a distance that they could have made efforts calculated to cause it to remove from its exposed position.

Proper regard for the safety of human life, and proper consideration for the interests of others, forbid that persons so occupied under circumstances such as are shown in this case shall be so inattentive as to be wholly unaware of the presence of such an obstruction upon the track until the locomotive has approached so near to it, or so careless and indifferent as to make no effort whatever to clear the track and save the endangered property of others so situated.

If the animal had been seen, it would have been the duty of the appellant's servants to have made a reasonable effort to cause it to get out of the way and to avoid a collision with it. If there was no excuse for not seeing the animal, there was no excuse for not making some effort to cause it to leave the track; and the fact that the animal was not seen can not exonerate the appellant from responsibility for the

failure to make such an effort.    Such failure was a violation of duty.    If it was nothing more than negligence, still the appellant must be held responsible for the consequent injury, there being no contributory negligence on the part of the appellee.

The court did not err in overruling the motion for a new trial.

The judgment is affirmed, with costs.

Filed May 2, 1891.

### DISSENTING OPINION.

REINHARD, J.—I can not agree with the opinion of the majority in its view of the law in relation to contributory negligence.    We all agree that where no order of the board of commissioners is shown by which stock is permitted to run at large, the common law prevails as to owners keeping up their stock, and the only question is, to what extent will the rules of the common law hold a man guilty of negligence who fails to keep his domestic animals in his own enclosure?

Conceding that the appellant was negligent, in that its servants, who were operating the train, did not see the animal in time to take the proper precautions against running against it, the question still remains, was the animal rightfully upon the appellant's road track, or was it a mere trespasser?    If a trespasser, what amount of care and precaution was the appellant required to exercise toward it?

It will not do to say the *animal* was a trespasser, but its *owner* was free from fault.    If the acts of the animal were such as to make it a trespassing animal, the responsibility for such acts are imputed to the owner, and he is held liable for them.

At common law the owner of animals is compelled to keep them at home.    If they break out and enter upon the lands of another, doing injury, he is liable in damages. *Stone* v. *Kopka*, 100 Ind. 458 ; *Williams* v. *New Albany, etc., R. R. Co.*, 5 Ind. 111 ; *Lafayette, etc., R. R. Co.* v. *Shriner*, 6 Ind.

141; *Page* v. *Hollingsworth,* 7 Ind. 317; *Indianapolis, etc., R. R. Co.* v. *Kinney,* 8 Ind. 402; *Myers* v. *Dodd,* 9 Ind. 290; *Indianapolis, etc., R. R. Co.* v. *McClure,* 26 Ind. 370; *Michigan, etc., R. R. Co.* v. *Fisher,* 27 Ind. 96; *Indianapolis, etc., R. R. Co.* v. v. *Harter,* 38 Ind. 557; *Jeffersonville, etc., R. R. Co.* v. *Huber,* 42 Ind. 173; *Jeffersonville, etc., R. R. Co.* v. *Adams,* 43 Ind. 402; *Pittsburgh, etc., R. W. Co.* v. *Stuart,* 71 Ind. 500. See the note in 2d ed. 10 Ind., pp. 292–293, citing decisions under common law.

If, then, such animals become trespassers when they enter upon the lands of another, without reference to the quality of the fences through which they pass, as decided in *Stone* v. *Kopka, supra,* they are no less trespassers when they enter upon the lands of a railroad company used for a railroad track. But it appears some distinction is sought to be made between different kinds of trespassing animals, clearly implying that railroad companies will be required to exercise one kind of care and diligence toward one class of such trespassing animals, and another kind toward another class. If the rule is to be established that in all cases the question as to whether the animal is to be considered such a trespasser as will hold its owner guilty of contributory negligence or not depends upon whether it is at large with the consent of the owner, then will such companies be required in each case to know the circumstances under which the animal happened to be there, whether by the sufferance of its keeper or as the result purely of its own breachy and roguish propensities. In other words, the company or its servants will be held to know at their peril whether the animal is a trespasser by consent of its owner, or a trespasser upon its own responsibility.

I freely concede that there is a conflict in the authorities, outside of the courts of Indiana, upon the definition of the common law rules, and as to how far the owners of domestic animals are responsible for their being at large. I believe it will be found, however, that many of the cases holding to the view expressed in the opinion of the majority are in States

where the doctrine of comparative negligence prevails, a doctrine which finds no place in the law of our State. But whatever may be the rule in other States, I am fully persuaded that there is no uncertainty in the decisions in Indiana, excepting, perhaps, some of the older cases, and I believe that upon examination many of the cases cited in the majority opinion will be found to sustain the doctrine to which I refer. In other words, I believe it is the settled common law of Indiana, that in the absence of an order made by the county commissioners allowing stock to run at large the owner is compelled to keep his animals in his own enclosure, and if they escape and enter upon the lands of another they are trespassers and he is held to be a wrong-doer, and if they stray upon a railroad track and are killed or injured at a place where the company is not bound to fence, the owner is charged with contributory negligence and can not recover even if the killing or injury was negligent, and can recover only if the killing or injury was wilful. Whether this law is reasonable or not, is not now the question. If it is so declared we are bound by it until it is overruled by the Supreme Court. In *Lafayette, etc., R. R. Co.* v. *Shriner*, 6 Ind. 141, the court says: " The common law imposes on the owner of domestic animals the duty of keeping them on his own lands, or within enclosures, and he becomes a wrong-doer if any of them escape or stray off upon the lands of another. 3 Black. Com. 209–210; *Wells* v. *Howell*, 19 Johns. 385. This, as a general rule, prevails in Indiana, and may be held applicable to the facts of this case."

If it be said that the question was not properly before the court in that case, as the facts showed that the owner permitted the animal to go at large, then let us turn to a later decision.

In the case of *Pittsburgh, etc., R. W. Co.* v. *Stuart, supra,* the action was for the negligent killing by the appellant of the appellee's horse, which entered upon the track at a point where the company was not bound to fence. The

complaint charged, in express terms, that the horse was on the track without the owner's fault when he was killed. This averment was, therefore, one of the issues in the case. In the court below there was a trial and finding for the owner of the horse, assessing his damages at the value thereof. From the judgment of the lower court the railroad company appealed, and the Supreme Court, in passing upon the sufficiency of the evidence to sustain the finding, made a clear enunciation of the common law rule in Indiana. It cited approvingly the cases of this and other States where that doctrine had been before declared, and proceeded to state further: "It must be assumed, therefore, that, at the time and place where the appellee's horse was injured, the common law rule prevailed, and that the horse was then and there trespassing upon the track of the appellant's railroad. This is so, as it seems to us, *even though it appeared that the appellee had used reasonable care and diligence to keep his horse upon his own grounds and within his own enclosure, and that the horse had escaped therefrom without his knowledge or consent.*"

The court goes on then to review the cases, saying at the conclusion of such review that it was not necessary that it should endorse or approve of the statements of the law enunciated in the cases decided by the courts of other States, some of which it had quoted. But it nowhere appears, in the opinion that the court did not fully endorse and approve the statement it had itself framed, in which it had clearly set forth the rule of law as we have quoted it above in italics; or that it had made that statement with any sort of mental reservation whatever. On the other hand, and as if the court desired to place beyond further controversy what it had decided upon this point, it informs us that "*the appellee's horse had escaped from his enclosure,* and was trespassing on the track of appellant's road. In this state of the case the appellant certainly owed no such duty to the appellee as required the stoppage of its train, in violation of its duty to its passengers; and that its employes in charge of the train

should go forward and carefully lead or drive the horse from the track of its road."

It will not do to say that the case turned upon the question of negligence on the part of the company or its servants. Negligence was one of the questions it is true, but contributory negligence was another question, and the case hinged as much upon one as upon the other of these points, and could not have been intelligently decided by ignoring either.

We think, also, that in several of the other cases cited in the opinion of the majority, the doctrine here contended for is tacitly recognized, if not distinctly enunciated. No case has been cited, and I do not believe any can be found, where a doctrine similar to that set up in the opinion of the majority has been declared to be the law in Indiana. Until that is done, however, this court is in duty bound to accept the decisions of the highest tribunal as the established law of the State.

It may not be unprofitable to remark that by some of the recent text-writers Indiana is classed with those States where the common law rule prevails. Thompson Neg., section 418.

To my mind there is a clear distinction between the case of an animal which is at large by virtue of an order of the board of commissioners, and one where no such order has been made. In the former case the order is a matter of record of which the world is bound to take notice, while in any other case of an animal at large the public can not be presumed to know in what manner it escaped or how it came to be upon the track. Thus, in cases where such an order is in existence, it becomes the duty of the servants and employes of a railroad company to be on the alert at crossings and other places not fenced, and to exercise a higher degree of care in ascertaining the presence of animals at such places, the presumption being all the time that there will be animals at large, while if no such order is made, the presumption is directly the opposite. In the former case the company must use ordinary care and diligence. In the latter, as the pres-

ence of the animal on the track of the road constitutes it a trespasser, its owner will be charged with negligence in suffering it to escape or be at large, and in case of injury the railroad company will only be liable in case of wilfulness, or acts from which the same may be inferred or will be regarded as such in law.

For these reasons I respectfully dissent from the decision announced in the principal opinion.

Filed May 2, 1891.

### Dissenting Opinion.

New, J.—I dissent from the principal opinion in this case, because the leading question involved has, in my opinion, been otherwise ruled by the Supreme Court of this State.

We should not, unless compelled to do so, bring in question any rule so important as this, which has been firmly settled for many years by the Supreme Court of this State.

The common law rule that " the owner of animals is obliged to keep them upon his own grounds, and is a wrong-doer if he suffer them to stray upon the grounds of others," has been for many years recognized by the courts and the people as a part of the law of this State, subject to the exception enacted by statute, that the board of commissioners of the different counties may direct by proper orders what kind of animals shall be allowed to pasture, or run at large on the uninclosed lands, or public commons, within the bounds of any township in their respective counties.

The assertion of a different rule now by this court can be productive of no good.

Filed May 2, 1891.