[Filed February 11, 1890.]

## P. A. MOSES, RESPONDENT, *v.* THE SOUTHERN PACIFIC RAILROAD CO., APPELLANT.

RAILROADS—DEPOT GROUNDS—FENCING.—The provisions of our statute, §§ 4044 and 4045, providing that if a railroad fails to fence its road against live stock, and creating a liability therefor. etc., does not extend or apply to depot grounds, and, in the absence of negligence, the company are not liable for stock killed thereon.

STOCK RUNNING AT LARGE—COMMON LAW   In this State the common law rule requiring every man to keep his stock within his inclosure is not in force, and from its early settlement all kinds of stock have been allowed to run at large upon uninclosed lands.

COMMON LAW—CATTLE STRAYING ON RAILROAD TRACK.—In those jurisdictions in which the common law rule prevails that the owner of cattle is bound to keep them in his own inclosure, it is generally held, though with some exceptions, that if he suffers them to go at large, and the cattle stray upon the railroad track and are injured or killed, the company is not liable, unless the conduct of its agents in the management of the train was wanton or wilful.

STOCK STRAYING UPON RAILROAD TRACK NOT CONTRIBUTORY NEGLIGENCE.—On the other hand, in those jurisdictions in which the common law rule as to the duty of the owner of cattle to keep them within his own inclosure is not in force, it is held

XVIII. OR.—25.

that a plaintiff in allowing his stock to run at large commits no unlawful act, nor is guilty of an omission of ordinary care, and if such stock stray upon an uninclosed railroad track and are injured or killed, whether they are rightfully there or not, he is not guilty of contributory negligence, but the company is liable, unless it or its agents exercised ordinary care or skill, in the management of its train, to prevent their injury or destruction.

RAILROAD COMPANY—LIABILITY.—The principle is that a railway company is liable in damages for injuries to stock, through its negligence, where the plaintiff contributed to the injury no further than permitting his stock to run at large.

NEGLIGENCE—PROXIMATE CAUSE.—Such negligence—if it may be called negligence—is not the proximate cause of the injury, and, in the sense of the law, does not constitute contributory negligence

APPEAL from the circuit court for Linn county,

*J. K. Weatherford,* for Respondent.

*H. H. Northup,* for Appellant.

LORD, J.—This is an action to recover damages for negligence in the management of the defendant's railroad, whereby a horse owned by the plaintiff was killed. The answer, after making the usual denials. sets up separately as a defense that the injury and damages were caused by the contributory negligence of the plaintiff; all of which he denied in his reply. There was a trial had, resulting in a verdict and judgment for the plaintiff, from which this appeal is taken.

By his brief, the counsel for the defendant, who is the appellant, says that the appeal involves but one question: "What is the liability of a railroad company for an injury done by a moving train to a horse running at large, and seeking pasturage upon the depot grounds of the company with the knowledge and permission of the owner?" This question arises out of an exception to a modification of an instruction asked, and is as follows: "If the jury believes from the evidence that the plaintiff voluntarily permitted his horse to run at large, and the horse was accustomed to pasture on the depot grounds of the defendant, and wandered on the railroad track and was killed, such con-- duct by the plaintiff would not preclude a recovery in this case by the plaintiff, unless the defendant's servants exercised the ordinary care of prudent men in running the train at the time of the accident. In this case, if you

believe from the evidence that the plaintiff was guilty of negligence in allowing his horse to be upon the depot grounds, and that such negligence contributed to the accident, still if you believe that the accident could have been avoided by the exercise of ordinary care and diligence on the part of the defendant, the defendant is liable."

The facts upon which this instruction was based were to this effect: That the evidence tended to show that the horse was, at the time he was struck by the locomotive, running at large on the depot grounds of the defendant, in the town of Tangent, and that the locomotive was attached to one of the regular passenger trains, which passed through the town north to south at one o'clock P. M., and was upon the regular time; that the engineer signaled his approach to the station by sounding the whistle when about three hundred yards distant therefrom, etc.; that the horse was, during all of said time and prior to the first sounding of the whistle for the station, running at large at or near said depot grounds, and had at different times previously to said day been seen occasionally pasturing upon said depot grounds; that plaintiff resided in said town, and about seven hundred feet away from said depot grounds; that there is a conflict of evidence as to what the speed of the train was when said horse was first seen to go upon the track and said alarm whistle was sounded, or as to whether or not said speed was slacked before the horse was overtaken by the locomotive, and as to whether or not the engineer endeavored to and could have stopped the train after the horse went upon the track and before he was struck by the locomotive, the speed of the train when the horse went upon the track and before he was struck by the locomotive being variously estimated, by witnesses, at from eight to twenty miles per hour, and some of the witnesses testifying that the speed of the train was constantly lessened before the horse was struck, while other witnesses testified that they could not perceive that the speed of the train was at all diminished between the sounding of the alarm and the striking of the horse.

The engineer testified that immediately upon sounding the alarm whistle he applied the brakes, reversed the engines, and did all that was in his power to do towards stopping the train, which was running about three miles an hour when the horse was struck. Other witnesses, who were standing on the platform some three hundred yards distant, testified that the engineer did, and some that he did not, check the speed of the train before striking the horse.

These facts show (1) that the injury to the horse occurred on the track on the depot grounds, and (2) that, as the horse had been seen prior to the day of the accident occasionally to pasture on the depot grounds, it is pre· sumed that he was suffered to run at large with the consent of his owner, and strayed upon the track under the circumstances indicated, and (3) that there is a conflict of evidence as to whether the engineer endeavored to check the speed of the train before striking the horse, but none that he did not sound the alarm whistle and turn the steam through the cylinder cocks to drive the horse from the track. Upon this state of facts, the contention of the appellant is (1) that the depot grounds are not included within the intention of the law requiring railroads to be fenced, and (2) that the plaintiff, in allowing his horse to run at large and stray upon the depot grounds and track, where he was killed by a moving train, was guilty of contributory negligence, which precludes his right of recovery. The language of the statute making railroad companies liable for killing stock "upon or near any unfenced track of any railroad in this State, whenever such killing or injury is caused by any moving train or engine or cars upon such track," is broad enough to include that part of the track which is contiguous to its stations or depots. Or. Code, §§ 4044, 4045. Taking it literally, the statute would apply to the entire track of the railroad, which would necessarily include such parts of the track as lie upon its depot or station grounds, thereby rendering the railroad company absolutely liable to the owner of any stock injured, for an

omission to fence its tracks upon its depot or station grounds. But such a construction is not consistent with the reason of the statute or the intention of its enactment. In view of the business transactions at depot grounds, it is as much for the public convenience that it should be open and unfenced as public highways, to which, applying the strict letter of the law, the statute would also extend at the places where the railroad track crosses such highways. The purposes for which these are to be used, and the right of public convenience, are inconsistent with the obligations to fence at such places, or to incur the liability created by the statute, and cannot therefore be held to apply to depot grounds, nor to public road crossings, nor to the streets of cities or villages. In *Davis* v. *Railroad Company*, 26 Iowa, 554, Wright, J., said: "The language is 'its road,' and we do not believe that this includes depot grounds. True, these grounds, including switches, side track, etc., may be a part of the road. This is not denied, for many purposes, and indeed most purposes, and yet we cannot think that the legislature contemplated these as a part of 'the road' by the statute under consideration." Within the principle thus declared, on account of the impracticability of fencing such places, we do not think that the statute applies to depot grounds, and so it has often been held by the courts. Rorer on Railroads, Vol. 622, 623, and note; 19 Am. & Eng. R. R. Cases, 539, note. Nor is there anything in the complaint or record to indicate that a recovery in damages is sought or any liability created by the statute, or other than the ordinary action to recover damages for negligence.

Upon the next question, namely, that the plaintiff, in allowing his horse to run at large, so that he strayed upon the track, was guilty of contributory negligence, and is precluded from a recovery, the authorities are not agreed. There seems, however, to be a line of distinction between them which accounts for this difference on principle, which perhaps would not exist without it, and this is, whether the common law rule which requires the owner of stock to

keep them in his own close, at his peril, prevails in the jurisdiction or not.    Of course, in any of them, this relates only to such cases as are not within the statutory obligation to fence, or such places as are excepted from its operation.    In those jurisdictions in which the common law rule prevails that the owner of cattle is bound to keep them in his own enclosure, it is quite generally held that if he suffers them to go at large, and the cattle stray upon the railroad track and are injured or killed, the company is not liable, unless the conduct of its agents in the management of the train was wanton or wilful.    In such cases the cattle are regarded as unlawfully at large, and exposed to danger by the fault of the owner, which, in the event of their destruction by collision with the locomotive, while on the track of the railroad, is considered as the direct consequences of his negligence, which will preclude a right of recovery in him for their loss, although it may have occurred through the negligence or want of care of the railroad company.

In *Railroad Company* v. *Munger*, 4 N. Y. 258, which was an action to recover damages for negligence in killing the plaintiff's oxen by running over them by a train while on the track of the defendant, the court, after reaching the conclusion that the oxen, when killed, were trespassing on the land of the defendant, under the common law rule that the owner of cattle is bound, at his peril, to keep them off the land of other persons, says Beardsley, J.: "It is not pretended that the act was done designedly by the persons in charge, but simply that it occurred through their negligence or want of care.    It is a well settled rule of law that such an action cannot be sustained if the wrongful act of the plaintiff coöperated with the misconduct of the defendants, or their servants, to produce the damage sustained.    I do not mean that the coöperating act of the plaintiff must be wrong in intention to call for the application of this principle, for such is not the law.    The act may have been one of mere negligence on his part, still he cannot recover."    "But injuries inflicted by design are not

thus to be excused   A wrong-doer is not necessarily an outlaw, but may justly complain of wanton and malicious mischief.   Negligence, however, even when gross, is but an omission of duty.   It is not designed and intentional mischief, although it may be cogent evidence of such an act.   Of the latter a trespasser may complain, although he cannot be allowed to do so in regard to the former."   In *Bowman* v. *Railroad Co.*, 37 Barb. 519, it is held that one who voluntarily suffers his cow to go at large in the public street, with no one to take charge of her, and to stray upon a railroad track at a time when cars are passing, is guilty of carelessness, and cannot recover for injuries to the cow happening through the negligence of the railroad company, not amounting to gross negligence, Miller, J., saying:   "His own act and negligence contributed to produce the injury complained of, and caused the death of the cow, and there is no evidence of gross negligence on the part of the defendant."   In *Maynard* v. *Railroad Co.*, 115 Mass. 460, Gray, C. J., said:   "If the horse had been rightfully upon the defendant's land, it would have been their duty to exercise reasonable care to avoid injuring the horse; but it being admitted by the plaintiff that his horse was trespassing upon the railroad, they did not owe him that duty and were not liable to him for anything short of reckless and wanton misconduct of those employed in the management of their train."

As the plaintiff is bound at common law to keep his cattle within his own enclosure, and liable for all damages done by them when they stray upon the lands of others, he is the party in fault; and it results, if he suffers them to stray upon the track of a railroad, they are there without right, and as trespassers, through his wrongful conduct, and if injured or killed by the negligence of the railroad or its agents in the management of its train, he must abide the consequences, upon the ground that the defendant company owes no duty of care to trespassing cattle on their tracks, except not wantonly or wilfully to destroy them, and that in permitting the cattle to be at large,

wrongfully or by his own fault he has contributed to pro-
duce the injury of which he complains, and is precluded
from a recovery.    When such a state of facts exist, nothing
but wilfulness on the part of the agents of the company,
or, as the authorities sometimes put it, such negligence as
would amount to wilfulness, would make the company
liable in damages for the killing of cattle upon their track,
so exposed by the fault of their owner.    *Railroad Co.* v.
*Hunter*, 38 Ind. 557; *Williams* v. *Railroad Co.*, 2 Mich. 265;
*Stucke* v. *Railroad Co.*, 9 Wis. 202; *Halloran* v. *Railroad Co.*,
2 E. D. Smith, 257; *Railroad Co.* v. *Ballard*, 2 Met. (Ky.)
257; *Bennett* v. *Railroad Co.*, 19 Wis. 145; *Railroad Co.* v.
*Tower*, 2 R. I. 404; *Vandgrift* v. *Redker*, 22 N. J. L. 185;
*Perkins* v. *Railroad Co.*, 29 Me. 307; *Woolsen* v. *Railroad Co.*,
19 N. C. 267; *Railroad Co.* v. *Skinner*, 19 Pa. St. 298; *Rail-
road Co.* v. *Spinner*, 67 N. Y. 153; *Railroad Co.* v. *Stuart*, 71
Ind. 504.

In some of the cases, and especially the older ones, the
term "gross negligence" is used as the equivalent of
"wilful negligence" as used by the later authorities, which
imports act or conduct that is wilful or wanton, and to
which the doctrine of contributory negligence has no ap-
plication; for when the injury done the plaintiff is occa-
sioned by the wilful and wanton act of the defendant, the
negligence of the plaintiff is no defense, and so it is held
by the cases referred to, with perhaps some slight excep
tions to cattle trespassing on the track of railroads.    As a
result of this class of cases in the States in which the com-
mon law rule prevails, it is generally considered that allow-
ing cattle to run at large is such negligence as precludes a
recovery.    On the other hand, in those jurisdictions or
States in which the common law rule as to the duty of the
owner of stock to keep them in his own enclosure is abro-
gated, it is generally held that a plaintiff in permitting
his stock to run at large commits no unlawful act, nor is
guilty of an omission of ordinary care, and if they stray
upon the uninclosed track of a railroad, and are injured
or killed, although they may be regarded as tres-

passers, he is not guilty of contributory negligence, but that the company is liable for their loss unless it exercised ordinary care and skill in the management of its trains to prevent their injury or destruction. It is considered, as the act of the plaintiff in suffering his stock to run at large is not unlawful nor negligent, nor likewise the act of the defendant in leaving its track uninclosed, yet when it is so, as the stock may stray upon it as other uninclosed places, the defendant takes the risk of such intrusion upon its track and the owner the risk of injury to his stock by unavoidable accident, but not of negligence or want of ordinary care, hence the conclusion that railroad companies are not liable for the ordinary negligence of their servants. In all such cases and jurisdictions where the common law rule is not in force and the owner of stock may allow them to run at large without violating the law, or being guilty of negligence, if such stock stray on an uninclosed track and are killed by the train, when by the exercise of ordi- nary care that loss or result might have been avoided, the negligence of the railroad company is regarded as the proximate cause of the injury, and the act of the owner in suffering them to run at large as too remotely connected with the negligence of the defendant to constitute contrib- utory negligence, or be operative as such a defense. Such acts are not the immediate cause of the injury or loss of property, nor do they concur and combine at the time with the negligence of the company as the natural and probable consequence of it, but at most bear only a remote relation to it, which, when stock is on their track, does not release the company from their obligation of reasonable care to avoid injuring them, at least, to the extent that the law requires; and common justice and humanity demands of others, when stock is trespassing upon their lands, not to injure or kill it, if by ordinary care they could prevent it. When the company is not bound to fence, the measure of liability is ordinary care, and though stock have no right to be on the track, especially when required for use of its trains, yet the company enjoys no special privileges over

other owners of lands, and is under the same obligation to exercise care to avoid injuring them, consistent with their duties in the management of the train. In *Railroad Co.* v. *Finley*, 37 Ark. 569, it is held that it is the duty of an engineer of a train to keep a careful and constant lookout for stock upon the track, and, although such be wrongfully there, yet he must use ordinary care and diligence to discover it and avoid injury to it, or the company will be liable for the injury done. The court say: "A very prudent man might not, perhaps, allow his stock to go at large in the immediate vicinity of a railroad, and one who does so may not be altogether free from negligence, yet he assumes only the risk of an accident which might not be avoided by ordinary care of the agents of the company." In *Balcom* v. *Railroad Co.*, 21 Iowa, 103, where the action was for damages sustained by killing the plaintiff's cattle by running the cars over them, at a point where the public highway crossed the defendant's road, it was held that if the cattle were not on the track by the negligence of the plaintiff, the test of the defendant's liability is whether, at the time of the accident, reasonable and proper care was exercised to avoid the injury.

In *Searles* v. *Railroad Co.*, 35 Iowa, 491, which was an action for negligence in killing the plaintiff's ox by a freight train on a public highway crossing, error was assigned for refusal to give, among other, this instruction: "Railroad trains, when cattle are on the track, are not required to slacken their speed, or to make signals by blowing the whistle or ringing the bell at road crossings, or places where the road has not a right to fence," and Day, J., said: "It was held, at a very early period in the judicial history of this State, that the mere fact of permitting cattle to go at large is not a ground for imputing negligence to the owner. A railway company is liable for injuries resulting from the careless and negligent management of its trains, where the injured party does not by his own negligence contribute to the injury. It is a corollary of these two propositions that a railroad company must

respond in damages for injuries to stock through its negligence, where the owner has contributed to the injury no further than merely permitting it to run at large." In *Railroad Co.* v. *Smith*, 22 Ohio St. 227, it was held that the servants of a railroad company, in operating its trains are bound to use ordinary care to avoid injury to domestic animals trespassing on the track; and the court say: "If the servants of the company in charge of the train, having due regard to their duties for the safety of the persons and property in their charge, could, by the exercise of ordinary care, have seen and saved the horses, we think they were bound to have done so." In *Blaine* v. *Railroad Co.*, 9 W. Va. 253, which was an action for negligence in killing a horse on a railroad track, the court, after remarking that the rule of common law requiring the owner of animals to keep them on his own land had never been in force in West Virginia, being inconsistent with its legislation, among other things said: "The remote negligence of the plaintiff will not prevent his recovering for an injury to his property caused by the negligence of the defendant. The negligence of the plaintiff that defeats a recovery must be a *proximate* cause of the injury. Suffering domestic animals to run at large, by means whereof they stray upon an uninclosed railway track, where they are killed by a train, is not, in general, a *proximate* cause of the loss; and hence, although there may have been some negligence in permitting the animals to go at large, such negligence being only a remote cause of the injury, it will not prevent his recovering from the railroad company the value of the animals, if the *immediate* cause of their death or injury was negligence of the company's servant in conducting the train."

The same language was used in *Railroad Company* v. *Elliott*, 4 Ohio St. 475, and see also *Kerwhacker* v. *Railroad Co.*, 3 Ohio St. 172, in which the principles of the law under discussion was set forth with great ability and much force and cogency of reasoning. In *Railroad Co.* v. *Mulligan*, 45 Md. 493, a State in which it is the duty of owners of

cattle to keep them within their inclosure, yet in an action for damages for the loss of a cow, run over by the cars of the defendant, Robinson, J., in delivering the opinion of the court, says: "No one has a right to complain of injury to cattle or other stock which he has permitted to stray upon a railroad track, unless such injury can be avoided, consistently with these higher and paramount duties resting upon the company—not to endanger its passengers. What we mean to say and to decide is this, that it is the duty of the company to exercise reasonable care to avoid injury to cattle or stock found on its road, though such cattle and stock may be there through the negligence of the owner." So, too, in *Trow* v. *Railroad Co.*, 24 Vt. 494, the court say: "Where the negligence of the defendant is proximate and that of the plaintiff remote, the author can then well be sustained, although the plaintiff is not entirely without fault. This seems now to be settled in England and in this county. Therefore, if there be negligence on the part of the plaintiff, yet if at the time when the injury was committed it might have been avoided by the defendant, in the exercise of reasonable care and diligence, an action will lie for the injury. So in this case, if the plaintiff was guilty of negligence, or even positive wrong, in placing his horse in the highway, the defendants are bound to the exercise of reasonable care in the use of their road and the management of their train and engine; and if the injury arose from the want of their care they are liable." "The railroad," said Redfield, C. J., "cannot justify either recklessness, want of common care at the time and after the cattle are discovered, or wanton injury." *Railroad Co.* v. *Jackson*, 25 Vt. 161. "The negligence," said Baldwin, J., "which disables the owner to sue must be negligence which directly or by natural consequences conduces to the injury. It is not easy for us to see, therefore, that the mere fact that a party who suffers his cows to go at large near the line of a railroad is guilty of such negligence as to excuse the corporation from reasonable diligence and care to avoid injury to them when they

happen to be on the track.   The suffering them to go at
large certainly is not the usual or natural cause of such an
injury.   Such a result would not probably happen once in
a thousand or perhaps ten thousand times."

The general conclusion to be deduced from this case is
that the fact of merely permitting cattle to run at large
near the line of a railway is not enough to excuse the
company from the exercise of ordinary care and diligence
to avoid injuring them when they may happen to stray
upon its track, consistently with a due regard for the
safety of its trains and passengers.   That such acts upon
the part of the owner of cattle are too remotely related to
the negligence of the defendant to concur and combine
with it as the proximate cause of the injury, and in the
sense of the law do not constitute contributory negligence,
but that the failure of the company to exercise ordinary
care and diligence under the circumstances is the immedi-
ate or proximate cause of the injury or loss of property,
and renders the company liable for its negligence.   So
manifest is the justice of this requirement not to injure or
kill stock which may happen to stray upon the track, if by
the exercise of ordinary care it can be prevented, that in
some jurisdictions, as we have shown, in which the com-
mon law rule prevails as to the duty of owners to keep
their stock within their inclosures, it has been adopted
and applied.   So that, speaking generally, it may be said
that a railroad company is liable in damages for injury to
stock caused by its negligence, where the owner has con-
tributed to the injury no further than merely permitting
them to run at large.   *Railroad Co.* v. *Patton,* 31 Miss. 188;
*Railroad Co.* v. *Gorman,* 26 Mo. 441; *Trout* v. *Railroad Co.,*
23 Grattan, 623; *Isabell* v. *Railroad Co.,* 27 Conn. 393; *Rail-
road Co.* v. *Williams,* 65 Ala. 74; *Railroad Co.* v. *Irish,* 72
Ill. 404; *Railroad Co.* v. *Lebus,* 14 Bush. 518; *Railroad Co.*
v. *Macon,* 40 Cal. 522; 1 Thomp. Neg. 498; Beach Con.
Neg. § 73.

Now, upon the facts, within which line of reasoning
does the case before us come?   It has been held that the

common law rule requiring every man to keep his stock within his inclosure is not in force in this state. *Campbell* v. *Bridwell*, 5 Or. 312. It is a matter of common knowledge that it is not only the general understanding, but the custom of the people, to allow their stock to run at large, and from the first settlement of the State until the present time all kinds of stock have been allowed to run at large on uninclosed lands. Besides, our legislation in relation to inclosures, estrays, and the marking and branding of stock, are inconsistent with its existence in this State. It is not then a violation of law, nor a want of ordinary care, merely to allow stock to run at large in this State, and unless some special circumstances exist, no one, individual nor corporation, may injure or kill them when they stray upon his uninclosed lands, or its railroad track, without incurring liability in damages therefor, unless ordinary care and diligence was exerted to prevent it. As applied to the facts in hand, within the reasoning of the authorities, the plaintiff's horse was not a trespasser in the common law sense when he strayed on the track near or on the depot grounds; nor within the intention of the statute as we have shown, was the defendant under any obligation to fence its depot grounds so as to exclude the horse, or other stock. It is conceded that the defendant had a right to its track, and while, as was said in *Smith* v. *Railroad Co.*, "the plaintiff's horse had no right to be there, though negatively stated, he was not in the wrong for being there," yet that circumstance did not relieve the defendant of the duty to exercise ordinary care, and if it was killed while thus on the track by its negligence, the defendant is liable. The original act being neither negligent nor unlawful, when the horse strayed upon the track and was killed, the act of the plaintiff was not the direct nor proximate cause of the injury, and could not, therefore, be such negligence as would operate as a defense, and preclude a recovery. To effect that result there must have been mutual negligence, in the sense of equivalent acts simultaneously concurring to produce the injury. Before that

can happen, the original act of turning loose the cattle or stock must have been done under such circumstances as indicated a want of ordinary care upon the part of the plaintiff as contributed directly to produce the injury. Ordinary care always has relation to the situation of the parties, and necessarily varies according to the particular circumstances under which it is exercised. An owner cannot turn loose his stock regardless of circumstances, or at a place where danger to them is constant and imminent, and when an injury occurs to them as a consequence of his conduct, though the defendant may not have been free from fault, escape the charge of negligence, or a want of ordinary care.

There is a marked difference between suffering stock to run at large upon uninclosed lands along the line of a railroad or adjoining its depot grounds, from which they may stray upon the track, and turning them loose uncared for and directly upon the grounds of a depot or station, covered with main and side tracks, switches, turn-outs and turn-tables, more or less constantly in use, with trains coming and going, where danger is known to exist, and where injury to them will probably happen as a consequence of the peril into which they have been voluntarily placed. In the former case, if they are killed by the negligence of the company, the act of the plaintiff is only the remote cause of the injury, while in the latter it is the proximate cause of the injury, coöperating with the negligence of the defendant to produce it. In such case the act itself is equivalent to deliberately putting the stock in a place of danger, and where injury to them is a probable consequence; the stock do not stray into a place of danger, but they are turned loose into a place where danger is known to exist, or which may be foreseen by the exercise of ordinary care, and the party cannot and ought not to recover for injuries which are the direct result of his own negligence. While, therefore, an owner may suffer his stock to run at large and pasture upon uninclosed lands, if they should stray upon the track of a railway and be

injured or killed by the negligence of the company, it is not considered such negligence as directly conduces to the injury, and does not preclude a right of recovery, yet there may be circumstances under which, to turn stock loose, uncared for, as would indicate such recklessness or want of ordinary care. as would preclude a recovery.

Now, turning to the record, we have presumed, without any direct evidence of the fact, that the plaintiff suffered his horse to run at large, and that he wandered upon the depot grounds and the track where the accident occurred. The record shows that he was running back and along and upon the track and away from the train when he was struck, on the depot grounds, from forty to sixty feet from the place where he started on the rack; that when the train was about three hundred yards distant and signalled its approach to the station by blowing its whistle, the horse then was either upon the depot grounds alongside of the track or else was upon the public road, and soon thereafter was seen upon the track. Within the principles of the authorities, where it is not unlawful to allow stock to run at large, "a railroad company must respond in damages for injuries to stock through its negligence when the owner has contributed to the injury no further than merely permitting it to run at large." Nor is there anything in the record to except the case from the operation of this principle.

There is no suggestion, upon the facts, of any special circumstances which made the conduct of the plaintiff in the premises negligent, or to charge him with a want of ordinary care. The place where the injury occurred was not a railway station in a thickly populated community, near to or adjoining some large and thriving town, netted with tracks and switches and turn-outs, at which a volume of business was done requiring the constant use of its depot grounds for its trains, passing and repassing, and where danger to roaming stock could be foreseen, and where to turn them loose would be voluntarily putting where injury to them would be the natural and probable consequence.

We concur in the case of *Smith* v. *Railroad Co.*, 34 Iowa, 508, to which we have been referred, that "the owner of cattle may not turn them out and enable them to frequent a place of great peril on the depot grounds or track, and then demand that the railroad company shall stop its trains and drive off his cattle, or slacken the speed or change the time-table in order to deliver his cattle from the peril into which he has voluntarily placed them." But it must not be overlooked that the court immediately added that "if the injury to the cattle was caused by the negligence of those having charge of the train, and which injury might have been avoided by the use of ordinary care, then, of course, the plaintiff might recover." The use of the words in the last clause of the instruction, "and that such negligence contributed to the accident," was not used in the sense of such negligence as was the proximate cause of the injury and operative as a defense, but only as a remote cause of the injury, and would not preclude a recovery.

The instruction must be examined by the light of the facts to which it is applied, and the circumstance of allowing the horse to run at large, except under special circumstances not raised by this record, is not an omission of ordinary care, and the law is, when a railroad company has injured stock through its negligence that it is liable, where the owner has contributed to the injury no further than merely permitting his stock to run at large. There is a large class of cases, headed by *Davis* v. *Mann*, 10 M. & W. 546, a case much criticised, but which Judge Thompson shows has been approved by the great weight of authority (5 So. L. Rev., 835), in which the principle is upheld, as declared by Lord Abinger, that "as the defendant might by proper care have avoided injuring the animal, and did not, he is liable for the consequences of his negligence, though the animal may have been improperly there," and which, as applied to the present case, is conclusive of the result already reached. And it may be observed further that that case and others were subsequently reviewed and considered by the court of exchequer, in *Tuff* v. *Warman*, 94

Eng. Com. Rep. 573, and it was held that mere negligence, or want of ordinary care on the part of the plaintiff, would not disentitle him to recover, if the defendant might, by the exercise of ordinary care and caution, have avoided the neglect or carelessness of the plaintiff. And in a still later and much discussed case (*Radley* v. *London N. W. Railway Co.*, 1 L. R. App. Cases, 759), it was held error to instruct the jury, if there was contributory negligence in the plaintiff they should find for the defendant, without adding the qualification unless the defendant could have avoided the mischief by the exercise of reasonable care. Lord Penzance said: "The first proposition is a general one, to this effect, that the plaintiff, in an action of negligence, cannot succeed if it is found by the jury that he has himself been guilty of any negligence, or want of ordinary care, which contributed to cause the accident. But there is another proposition, equally well established, and it is a qualification upon the first, namely, that though the plaintiff may have been guilty of negligence, and although that negligence may, in fact, have contributed to the accident, yet if the defendant could in the result, by the exercise of ordinary care and diligence, have avoided the mischief which happened, the plaintiff's negligence will not excuse him." As applied to the facts in hand, the principle is required to avoid the destruction of life and property, if by ordinary care it may be safely done, or else it will be liable, though the plaintiff may have been negligent. Wharton on Negligence, § 379, note 5. So cogently has this principle been supported that no person or corporation had the right to recklessly inflict wrong, or to destroy the property of another, even when trespassing, if by the exercise of ordinary care it may be avoided, with due regard to the safety of the train, impressed itself upon the justice and humanity of courts, that it has been adopted and applied in some jurisdictions where the common law rule prevails which requires the owner to keep his stock within his inclosure. Within the doctrine of these cases, although the present case does not require us to invoke it,

the instruction is incontestibly sustained by the law. As no other question is presented by the record, or made at the argument, it follows that the judgment must be affirmed.

THAYER, C. J., dissenting.—I am unable to concur in the result reached by the majority of the members of the court in this case. I cannot assent to the view that an owner of domestic animals can pasture them upon the depot grounds of a railroad company without being chargeable with such a degree of negligence as will preclude his right to a recovery of damages for their injury or destruction by moving trains of cars upon the track of the road, unless done intentionally. There is no stronger evidence to my mind of carelessness and negligence upon the part of such owner than to allow the animals to go at large and wander about such places, where they are necessarily exposed to being run over and killed. My learned associate, who prepared the majority opinion herein, has with great care and research collated a large number of both English and American authorities upon the subject, and drawn as a conclusion therefrom that where the common law rule, which required the owner of stock to keep it within his own enclosure, did not prevail, his permitting it to run at large would not, if it were to stray upon a railroad track and receive injury, necessarily be such negligence as directly contributed to the injury; and he attempts to show that the common law rule referred to does not obtain in this State. As an abstract proposition, I make no contention respecting that view; but in the determination of all this class of cases, we must look squarely at the facts and circumstances in order to make a just decision. Theories and distinctions, however specious and refined, **cannot** disprove a self-evident truth.

It appears from the bill of exceptions that the respondent has lost two horses which have been run over and killed by rail cars upon the road in question, and it is very evident that if he had a large band, and took no better care of them than he did of the one in question, as shown

by the testimony, he would lose them all in the same way, unless the company ceased to operate its road and turned its depot grounds into a horse pasture. The bill of exceptions states that "the evidence tended to show that said horse at the time when he was struck by defendant's locomotive was running at large on defendant's depot grounds in the town of Tangent, Linn county, * * * and had at different times previously to said day been seen occasionally pasturing upon said depot grounds. The plaintiff resided at all times in said town of Tangent, and 700 or 800 feet away from said depot grounds." This court knows judicially that the railroad in question constitutes a part of a line of road extending from Portland, Oregon, to San Francisco, California, a distance of more than 700 miles, and is the main avenue of transportation of passengers and freight between the two States. That in operating it a large number of trains of cars and rolling stock are employed, and that at all such points as that in question, horses and cattle could not be permitted to pasture upon its depot grounds with any degree of security, however vigilant and careful those having charge of the trains and rolling stock might be in regard to their management. Yet the respondent, living in said town of Tangent, within a few hundred feet of the place where his horse was killed, permits it to run at large upon the lands of the company adjoining the depot, which must necessarily be left open in order to enable the public to transact business with the company. To conclude that such act, under the circumstances, is not the result of supine indifference and negligence upon the part of the owner of the animal would, it seems to me, be absurd and stultify reason. The respondent. probably resided upon a town lot, and having no ground to pasture his horse upon, concluded he might forage upon the company's land. He knew, of course, that he had ro right to allow his horse to run there; knew that he was exposing the animal to imminent peril by doing so; but the opportunity was so favorable for nipping herbage from another's land free of expense, that he was

willing to take the risk of sacrificing the life of the horse. I can conceive of no carelessness more censurable than to allow horses and cattle to run at large in such a locality; and no prudent man would think of permitting it out of regard for the beasts themselves. But there are other far more important considerations than the regard for the animals and their value; these things are incomparable to the damage liable to accrue in consequence of running an engine and train of cars over such animals. Several employés upon railroads have lost their lives during the last year or two from such incidents, and thousands of dollars of damage done; cars have been thrown from the track and the lives of passengers jeopardized.

A railroad company can illy afford to run its engine and cars over an animal, and will not do so where it can possibly be avoided, whether liable for its value or not. The respondent had no legal or moral right to suffer his horse to be at large upon the railroad company's depot grounds. He was thereby doing the company and the public a positive wrong, and I am opposed to his being rewarded for his unjustifiable negligence in that particular. That his act, in allowing the animal to go where it did, directly contributed to the damages he seeks to recover, and which the jury graciously awarded to him, there can be no doubt, if viewed from a common sense standpoint. This is not a case involving the right of stock to run at large upon a range or open common. There the land is thrown open or left open by the voluntary act of the proprietor, which is construed to be an implied license to the owners of domestic animals to use the same for grazing purposes. But here the railroad company is compelled to leave its depot grounds open for the accommodation of the public, for the purposes of receiving and delivering freight and for the convenience of persons traveling upon it. The grounds being left uninclosed under such circumstances, cannot be construed into a license to pasture them, and the conditions are of such a character as to impliedly forbid it. Nor do I oppose the view expressed in the said opinion regarding

the duty of employés of a railroad company to use reasonable effort at all times to prevent the injury or destruction of such animals when found upon the track of the road, although they are there wrongfully. Because cattle or horses go upon a railroad track through the negligence of their owner, it does not follow that the company has the right to kill them; its employés should always avoid running them down where they are able to stop the train without injury to it or without endangering the safety of passengers. But I am decidedly opposed to a trial court referring such a question to a jury, unless there is evidence in the case tending to establish the fact that they could reasonably and safely have stopped the train. The majority members of the court assume that the evidence in this case tended to prove that the managers of the train, by the exercise of reasonable diligence, could have obviated the casualty in question. I very much doubt, however, whether it warrants that assumption.

The statement in the bill of exceptions in regard to that matter is as follows: "That said locomotive was at the time attached to one of defendant's regular passenger trains, which passed through said town and depot grounds, from north to south, about one o'clock P. M. of the day, which was the regular time for said train to pass said station at Tangent; that upon approaching said station, and when about three hundred yards distant therefrom, the engineer in charge of the train signalled his approach to said station by sounding the whistle; that said horse was at the time either upon the depot grounds alongside the track or else upon the public road at the north boundary line of the depot grounds, and soon thereafter was seen upon the track of the railroad on the depot grounds, which track near the road was elevated some ten or twelve feet, and at the place where the horse was struck was elevated six or eight feet above the surrounding ground; that soon after the whistle was sounded the horse was so seen upon the track between the last named two points on the depot grounds, and was walking towards

the approaching train as if intending to reach said county road, which crosses the railroad track at that point; that when the horse had progressed a few steps in that direction upon the track, the engineer sounded the alarm whistle twice or oftener and turned the steam through the cylinder cocks to drive the horse from the track; that the horse was at that time from sixteen to sixty feet from said road, and the train was distant from the horse from one hundred and eighty to two hundred and fifty feet, on the opposite side of the said county road; that when the engineer so sounded the alarm whistle the horse turned immediately around on the track, and started running back along and upon the track towards the south and away from the train, but was overtaken and struck by the train within from forty to sixty feet from where he so turned around on the track.   *   *   *   That there is a conflict of evidence as to what the speed of the train was when said horse was first seen to go on the track and said alarm whistle was sounded, and as to whether or not said speed was slacked before the horse was overtaken and struck by the locomotive, and as to whether or not the engineer endeavored to and could have stopped the train after the horse went upon the track and before he was struck by the locomotive, the speed of the train when the horse went upon the track being variously estimated, by witnesses, at from eight to twenty miles per hour, and some of the witnesses testifying that the speed of the train was consider ably lessened before the horse was struck, while other witnesses testified that they could not perceive that the speed of the train was at all diminished between the sound ing of the alarm whistle and the striking of the horse: The engineer testified that immediately upon sounding the alarm whistle he applied the brakes, reversed the engines, and did all that was in his power to do towards stopping the train, which was running about three miles per hour when the horse was struck.   The other witnesses who testified were standing on the depot platform, some three hundred feet distant from the point where the horse was

struck by the locomotive, and nearly in a direct line with the length of the approaching train, and some of them stated that they did not, and some of them that they did, think the engineer endeavored to check the speed of the train before striking the horse."

I do not think the jury was justified in finding from the facts, under the most favorable construction to the respondent which they could reasonably give them, that the employés of the company in charge of the train were guilty of violating their duty in the particular referred to. I do not believe that the facts were sufficient to sustain an allegation that said employés, by the exercise of reasonable care and diligence, could have avoided striking the horse with the locomotive. A finding by the jury that a train was running at the maximum or minimum rate supposed by the witnesses, or any intermediate rate per hour when the alarm was sounded, and that it was 250 feet from the horse at the time—the greatest estimated distance—and that the engineer was not endeavoring to stop it, and could have done so, after the horse went upon the track, and before it was struck by the locomotive, would not have been sufficient to establish such want of care, or negligence, as it would have lacked the further essential fact that the train could have been stopped within the distance indicated, and upon that character of grade, without danger of wrecking it, and imperiling the safety of those on board. An engineer of a railroad train is charged with a responsible duty, and he must be the judge, in the event of an emergency, as to the proper course to be pursued. He is often compelled, in cases of threatened danger from causes such as existed in this case, to accelerate instead of retarding the speed of the train, in order to save his own life, and the lives of others depending in a great measure upon his prudence and discretion. It would therefore be highly unjust to impute negligence to his conduct in the performance of his duty without proof of all the facts necessary to constitute it. It could hardly be supposed that a person entrusted in so important a station as that of engineer

upon a passenger train of cars, would neglect to check the
speed of the train in order to avoid running over a horse
discovered upon the track, where it could be effectually
and safely done.   No one knows better than the engineer
himself that his own life is in imminent peril whenever
such an occurrence happens, and the law of self-preserva-
tion, if no other consideration, would prevent him from
voluntarily taking such a risk.    I think it may reasonably
be claimed as a rule of evidence in such cases that the
engineer is presumed to have performed his duty unless
the contrary is shown by direct and positive proof.    In
this case, however, no proof of any neglect on the part of
the engineer, or of any of the employés of the company,
was attempted to be established, except by remote infer-
ence, not deducible from the facts claimed.

It seems to me, therefore, that when the circuit court
gave the instruction: "In this case, if you believe from the
evidence that the plaintiff was guilty of negligence in
allowing his horse to be upon the depot grounds of
defendant, and that such negligence contributed to the
accident, still if you believe the accident could have been
avoided by the exercise of ordinary care and diligence on
the part of the defendant, the defendant is liable," it com-
mitted error.    Cases of this kind are too important to the
public to be left wholly to the decision of a jury who, in
ninety-nine cases out of a hundred, will determine them
from sympathy, prejudice and caprice.    Courts have a re-
sponsibility to perform aside from announcing abstract
propositions of law.    It is the duty of a trial court and of
this court to see that justice is administered, and it cannot
be shirked by a pretext that the case was a proper one to
be determined by the jury.    In the trial of actions at law
where the testimony in support of the issues is conflicting,
it is the province of the jury to determine the facts; but
the court should always carefully scan the testimony and
ascertain upon what issues between the parties it is con-
flicting, and not shuffle the whole responsibility on to the
jury.    The instruction above set out left the jury in this

case free to determine it according to their own notions of right, and without regard to the rules of law. The court had refused to give the instruction requested by the appel: lant's counsel, that it was negligence in the owner of a horse to voluntarily permit it to run at large and seek pasturage upon railroad depot grounds, and if it were un- intentionally injured by the employés of the railroad through negligence in operating its cars, while the horse was so trespassing upon such grounds, the owner of the horse could not recover damages from the railroad com- pany for such injury; and after such refusal proceeded to tell the jury that *if they believed* from the evidence that the plaintiff was guilty of negligence in allowing his horse to be upon the depot grounds of defendant, *and that such negligence contributed to the accident*, still, etc. By this in- struction the question as to whether or not the plaintiff was guilty of negligence in allowing his horse to be upon the depot grounds of defendant, and that such negligence contributed to the accident, a very important question of law, indeed. was left entirely to the *belief* of the jury from the evidence Yet this part of the instruction is less ob- jectionable than the latter clause thereof, as it restricts the jury in their finding, whether the plaintiff was guilty of negligence on account of the act referred to, and whether such negligence contributed to the accident, to their belief *from the evidence*, while the latter clause,—to the effect that if they believed that the accident would have been avoided, etc., would indicate that they might find the defendant liable from general belief, or belief de- rived from any source. The rule that a railroad company may be liable for killing stock upon its road, although wrongfully there, does not arise out of any new principle; it has always been recognized as a wholesome doctrine that an owner of property had no right to destroy or mis- treat another's cattle found trespassing upon the property, but must exercise reasonable care and prudence in re- moving them. The issue in this case was to this effect: The plaintiff said to the defendant, "My horse, without

any fault of mine, went upon your railroad track, and your agents and servants so carelessly and negligently ran and managed your locomotive and cars upon said track, that the same were run against the horse and thereby killed it, to my damage, etc." The defendant said in answer thereto: "My agents and servants were not guilty of the alleged carelessness and negligence, but the damage of which you complain resulted from your own carelessness and negligence."

Now, the plaintiff having failed to charge an intentional injury to his animal, should, in order to avail himself of the rule which allows a recovery in such cases, in favor of a party guilty of contributory negligence on his part, have averred in the reply that notwithstanding the alleged carelessness and negligence charged against him in the answer, he was still entitled to recover the value of his horse, for that the agents and servants of the defendant might and could, by the exercise of reasonable efforts, have avoided running the locomotive against the animal, and that they wholly failed to make such efforts. This would have presented the real issue in the case, an issue tendered by the plaintiff, and which he would have been compelled to maintain by a preponderance of evidence; but he tendered no such issue in his reply. Upon the contrary, he merely denied the allegation of his own carelessness and negligence in the affair. The court, however, cast the burden upon the defendant of proving not only that the plaintiff was guilty of carelessness and negligence which contributed to the injury, but virtually required the defendant to show that it could not have avoided the accident by the exercise of ordinary care and diligence. The said instruction, substantially, went to that effect. It was to the effect that if the jury found the plaintiff was guilty of negligence in the affair, "and that such negligence contributed to the accident, still the defendant was liable if the jury *believed* that it could have been avoided by the exercise of ordinary care and diligence on the part of the defendant." Under that view, a

plea on the part of a defendant, in an action against him for negligence, that the plaintiff was also guilty of negligence which contributed to the injury, would not be good unless it were averred in the plea also that the result could not have been avoided by the exercise of ordinary care and diligence on the part of the defendant. Nor would the defendant's proof in support of his plea be of any avail unless it incontestibly established that the occurrence could not have been avoided by the exercise of such care and diligence on his part. The logical aspect of the instruction is far beyond my comprehension. If the plaintiff's negligence contributed to the accident, and the defendant was so guilty of negligence in the affair, then it was necessarily the result of their joint wrong, and it certainly could have been avoided by the exercise of ordinary care and diligence on the part of the plaintiff. Why, then, should the defendant be liable to the plaintiff for its wrong when the plaintiff's wrong was at least equally as instrumental in producing the result?

This will be the first case on record, I imagine, where contribution between wrong-doers has been enforced by a court of justice. If there had been evidence in the case tending to show that the conduct of the agents and servants of the appellant was reckless in the transaction which resulted in the destruction of the respondent's horse, or which indicated a total indifference and disregard of the respondent's rights of property, and such fact had been alleged in the complaint, or set forth in the reply, the trial court might very properly have instructed the jury that if they found that such had been the conduct of the agents and servants of the appellant, they would be authorized to find him liable, although the plaintiff were guilty of negligence which contributed to the accident; but in order to admit of a recovery in such a case, the conduct of the defendant must be proven to have been something more than negligent. It must be shown to have been wilfully done, for upon no other ground can a plaintiff recover damages against a defendant for an injury resulting from

the joint act of both parties.   The law will not tolerate so
illogical a sequence as the allowance of a recovery of dam-
ages by one party against another on account of a transac-
tion in which they are *in pari delicto.*   But to submit to a
jury questions of fact, where there is no evidence in the
case which will warrant them in making a finding thereon,
or to submit to them questions involving both law and fact
in a confused mass, and then send them out to guess at a
verdict, is a travesty upon justice.   I do not think the
respondent was entitled to recover the judgment appealed
from, nor see how it can legally be upheld.   It is unjust in
principle and pernicious in its consequences, and was evi-
dently obtained by sham and pretense.   The idea that
those in charge of the train of cars in question ran it
against the horse purposely, or failed to do all in their
power which could safely be done to avoid the collision, is
too absurd and preposterous to be credited for a moment.

The courts of this State cannot afford to tolerate a
sentiment which ignores the rights of any parties litigant,
whether belonging to natural or artificial persons.   Because
the appellant is a wealthy railroad corporation, and possibly
arbitrary, extortionate and exacting in its dealings with
the public, it does not follow that its rights should be
ignored; nor is it good policy on the part of the community
to countenance or encourage such practice.   We must deal
honestly and fairly by railroad companies, whether they do
so by us or not.   Such a course will be found to be by far
the best in the long run.   We may succeed in compelling
them to pay for a few horses and cattle belonging to
thriftless owners, who would probably prefer to have
them run over and killed, if they could get anywhere near
their estimate of value of the animals, than to exert the
slightest effort to prevent the occurrence; but the advan-
tage will be very inconsiderable as compared to the injury
which retaliatory measures, if resorted to on the part of the
railroads, would occasion, and it would be very unwise to
incite any such antagonism.   Railroad companies should
be required to do their full duty to the public, and if it

need legislation to enforce it, stringent measures should be adopted. But to allow a petty system of illegal and unjust plundering of them will prove to be an indiscreet and short-sighted policy.